PEOPLE v STEWART

Docket No. 95951. Submitted October 13, 1987, at Detroit. Decided February 2, 1988.

Lisa Stewart and Laverne Norwood, after being bound over on controlled substances charges, moved to have certain evidence found during the searches of their purses suppressed. The Recorder's Court of Detroit, George W. Crockett, III, J., granted the motion to suppress, rejecting both the prosecution's claim that the searches of the purses were proper weapon searches and the claim that the searches were a proper extension of the search authorized by a warrant to search the premises in which the purses were found. The proofs showed that both defendants were employees at the named premises, a lounge. At the time of the execution of the search warrant, one purse was found behind the bar and the other purse was found in a locked room which contained contraband. At the time the purses were found, both defendants were being held at another location on the premises while the search of the premises proceeded. The prosecution appealed.

The Court of Appeals *held:*

1. Since the purses were not in the possession and control of the defendants at the time of the execution of the search warrant and the defendants did not have access to the purses, the search of the purses cannot be justified on the ground that a protective search for weapons was necessary.

2. Since the purses were not found on defendants' persons or in close proximity to them and were found in areas not generally accessible to the public, and in the one case in an area containing contraband, and since both defendants were employees of the lounge, the purses could properly be treated as containers located on the named premises and could therefore be searched as such pursuant to the lawfully issued search warrant.

Reversed.

REFERENCES

Am Jur 2d, Searches and Seizures §§ 92, 97.

Lawfulness of warrantless search of purse or wallet of person arrested or suspected of crime. 29 ALR4th 771.

Searches and Seizures — Search Warrants — Purses — Containers.

Police having a warrant to search a tavern for suspected controlled substances may properly search purses which were owned by employees of the tavern which are found in locations not generally available to the public and which at the time they were found were not within the possession or control of the owners, since under such circumstances the purses may properly be considered to be containers on the designated premises which might have been used to conceal the designated objects set forth in the search warrant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, John D. O'Hair, Prosecuting Attorney, *Edward Reilly Wilson,* Chief of the Criminal Division, Civil and Special Litigation, and *A. George Best II,* Assistant Prosecuting Attorney, for the people.

*Gerald Evelyn,* for Lisa Stewart.

*Mark J. Kriger,* for Laverne Norwood.

Before: J. H. Gillis, P.J., and Gribbs and J. C. Timms,* JJ.

Gribbs, J. This is a prosecutor's appeal of a suppression order. On February 20, 1986, the Wayne County Sheriff's Department executed a search warrant at the Shadow Box Lounge in the City of Detroit. The search was for cocaine, drug proceeds, drug paraphernalia and records relating to drug trafficking. The warrant also named and authorized the search of Darryl and Reginald Thomas, the alleged owners and operators of the lounge. At the time of the search, defendants Stewart and Norwood were in the lounge. Both defendants worked in the lounge, and defendant Norwood is the wife of Reginald Thomas. The

---

* Circuit judge, sitting on the Court of Appeals by assignment.

affidavit filed in support of the warrant also mentioned Laverne Norwood, alleging that one of the vehicles used by Reginald Thomas was registered to her.

As the police began their search, they discovered a gun on Reginald Thomas. At this point, the remaining individuals in the lounge were advised that they would be patted down for weapons. Handguns were found in the possession of two patrons but not defendants. All the people present were moved to a central location in the lounge.

Before proceeding with the search, everyone present was asked whether they had money, jewelry, or valuables to identify in the lounge. The prosecutor claims that this was standard procedure. Both defendants stated that their purses were in the lounge. Defendant Norwood's purse was in the locked office adjacent to the bar. Defendant Stewart's purse was behind the bar.

After obtaining a key, Captain Turner opened the office door, found the purse, and brought it to Norwood who identified it as hers. Also in the back room, according to Turner, was cocaine in an open briefcase and money and cocaine in the top drawer of the desk. The room also contained two firearms, wrappings with cocaine residue, and two ladies coats which defendants Norwood and Stewart identified as belonging to them.

Next, Turner searched Norwood's purse and discovered a handgun. He then conducted a more thorough search of the purse and inside a wallet he discovered a card with an alleged drug transaction recorded on it: "One ounce, $2000.00."

Officer Greene retrieved defendant Stewart's purse from behind the bar and began a thorough and lengthy search for evidence. Inside the purse, Officer Greene discovered a clear coin envelope with what she believed was cocaine residue inside

(it appears that there was more than one envelope).

At the hearing on the defendants' motion to suppress the admission into evidence of the items found in the purses, defendants argued that there was no probable cause to search the purses, because there was nothing linking defendants to the alleged unlawful activity being conducted in the lounge. Defendants also argued that there was no justification to conduct a protective search for weapons in the purses under *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).[1]

It was the prosecution's position below that they had justification to search the purses pursuant to the search warrant which provided for a search of the entire lounge. The prosecution contended that under the warrant it was proper to search any closed containers within the lounge. Additionally, the prosecution maintained that the close proximity of Norwood's purse and Stewart's coat to the contraband found in the back room rendered it reasonable and justifiable to search defendants' purses. Finally, the prosecution argued that the search of defendants' purses was a protective search for weapons authorized under *Terry.*

The trial court, without extensive elaboration, found the prosecution's arguments insufficient, particularly the arguments not resting on *Terry,* and suppressed the use of the card and the envelopes which contained cocaine residue.

On appeal, the prosecution argues that the purses were searched pursuant to a valid weapons search authorized under *Terry, supra.* The prosecution maintains that the *Terry* search of Nor-

---

[1] A protective search for weapons, in the absence of probable cause, must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby. *Terry,* 392 US at 25-26.

wood's purse resulted in the discovery of a concealed weapon violation (although Norwood was not arrested or charged with that offense) and that the seizure of the card evidencing a drug transaction as an incident to the seizure of the weapon. The prosecution also claims that the same valid *Terry* weapons patdown resulted in an inadvertent plain view discovery of the cocaine-tainted envelopes in Stewart's purse.

We find untenable any claim that the search of the purses can be justified as a protective search for weapons under *Terry*. The purses were not on the persons of defendants. Defendants were isolated in a central location with no access to any weapons which might have been located in their purses. The police had control of the purses and could have held them until the completion of their search of the premises. To summarize, there was clearly no need to engage in a protective search for weapons and thus no *Terry* exception can apply.

We believe, however, that the search was valid on another basis. It is our opinion that the search warrant for the premises authorized the search of the purses as containers in the described premises which might contain the items named in the warrant. It is important to emphasize that defendants' purses were not located on their persons or in the places where patrons in the lounge might be expected to place their purses while patronizing the lounge.

Defendant Norwood argues that under *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), her mere presence at the Shadow Box Lounge did not give rise to probable cause to search her person or belongings. In *Ybarra,* the Supreme Court held that "mere propinquity to others independently suspected of criminal activity

does not, without more, give rise to probable cause to search that person." 444 US 91. There must be probable cause particularized as to that person before that person can be searched or seized. *Id.* Ybarra was a patron of a tavern when the police executed a search warrant to search the premises of the tavern and the bartender. The police had no knowledge at the time they executed the search warrant that Ybarra would be in the tavern and they had no reason to believe that Ybarra had been engaged in or was about to engage in any criminal activity. Nevertheless, the police searched Ybarra's person and discovered a cigarette pack containing packets of heroin in his pants pocket. The search of Ybarra merely because he was present was found to be constitutionally impermissible. *Id.,* pp 90-91.

In *People v Arteberry,* 154 Mich App 1; 397 NW2d 198 (1986), lv gtd 428 Mich 857 (1987) (leave limited to the issue of whether to apply the rule of *Ybarra*), our Court, following *Ybarra,* held that, unless a search of a particularly described person is expressly authorized by a warrant, a full search of a person present on the premises subject to a warrant may not be based upon the warrant. *Id.,* p 4. The police in *Arteberry,* when executing a search warrant for drugs at a residence where the defendant was present, had searched defendant's person and discovered incriminating evidence. See also *People v Burbank,* 137 Mich App 266; 358 NW2d 348 (1984), cert den 469 US 1190; 105 S Ct 962; 83 L Ed 2d 967 (1985) (also follows *Ybarra*).

We find the facts of the instant case distinguishable from *Ybarra.* Commenting on *Ybarra,* the United States Supreme Court, in *Michigan v Summers,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981), stated that the *Ybarra* "Court concluded that the search of Ybarra was invalid because the

police had no reason to believe he had any special connection with the premises, and the police had no other basis for suspecting that he was armed or in possession of contraband." 452 US 695-696, n 4. Here, by contrast, defendants did have a special connection with the premises. Defendants' purses, not their persons, were searched. Nor were the purses in close proximity to defendants or in locations where a patron would be expected to place her personal belongings. Instead, one purse was behind the bar and the other was in the locked back room, along with drugs, money and firearms. The coats of defendants were also located in this back room.

In *United States v Micheli,* 487 F2d 429 (CA 1, 1973), a search warrant authorized the search of business premises but not the person of defendant. Defendant was present at the time the warrant was executed, but his briefcase was discovered in a separate room. The briefcase was searched and incriminating evidence was found inside. *Id.,* p 430. In affirming the lower court's denial of defendant's motion for suppression of the evidence, the *Micheli* court acknowledged that it would be too broad an interpretation under a warrant for the premises to allow the search of all personal effects not in the physical possession of their owner. The court recognized, however, the reasonableness of searching containers found on the premises which might contain the items described in the warrant, stating:

> In determining to what extent a recognizable personal effect not currently worn, but apparently temporarily put down, such as a briefcase, falls outside the scope of a warrant to search the premises, we would be better advised to examine the relationship between the person and place. [*Id.,* p 431.]

The *Micheli* court also stated that it was necessary to examine why a person's belongings happen to be on the premises. *Id.,* p 432.

The dilemma the *Micheli* court identified was balancing the rule permitting searches of premises and the rule prohibiting searches of the person. *Id.* The court found that the defendant in *Micheli* was not a mere visitor or passerby who found his belongings vulnerable to a search of the premises. Instead, the court found that the defendant had a "special relation" to the premises and that the warrant reasonably comprehended within its scope those personal items, such as defendant's briefcase, which might be lying about the office. *Id.*[2]

In *United States v Gray,* 814 F2d 49 (CA 1, 1987), the court noted the general rule that containers located on premises which might conceal the types of items described in the warrant are subject to search. *Id.,* p 51. Although the defendant in *Gray* was not named in the warrant, his windbreaker, draped over a chair in the premises subject to the warrant, was searched. The *Gray* court upheld the search, citing *Micheli*'s holding authorizing the search of personal effects where there is a "relationship between the person and the place." *Id.* The *Gray* court concluded that the defendant, under the circumstances then existing at the time of the search, was not a casual afternoon visitor to the premises and upheld the search. *Id.*[3]

Similarly, defendants in the instant case were clearly not mere visitors or passersby; they had a special relation to the place being searched. They

---

[2] The defendant in *Micheli* was a co-owner of the premises being searched.

[3] The defendant in *Gray* was discovered in a private residence (for which the police had a warrant to search its premises and arrest its owner, Dostie), outside of which a drug deal had just "gone down," at the unusual hour of 3:45 A.M. The police also had reason to believe that Dostie was not operating alone.

both worked at the lounge. In fact, defendant Norwood was married to one of the individuals named in the warrant and her name was in the affidavit. The purses were not on defendants' persons or in close proximity to them. Instead, one of the purses was located in a locked room where there were also present open displays of drugs, money and firearms. Also in this locked room were coats belonging to both defendants.

The purses could easily have concealed the items named in the warrant. Therefore, considering the totality of the circumstances of this case, the search of the purses belonging to defendants was properly within the scope of the warrant. Although the lower court correctly ruled that there was no *Terry* exception validating the search, it erred in granting the motion for suppression brought by defendants.

Reversed.