PEOPLE v COLEMAN

Docket No. 84313. Argued April 3, 1990 (Calendar No. 3). Decided
September 12, 1990.

Era May Coleman was charged in the 36th District Court with
possession with the intent to deliver less than fifty grams of a
mixture containing cocaine as a result of the discovery of
certain evidence in her purse during a valid premises search
pursuant to a warrant designating the premises and the items
to be seized. The court, Robert J. Sattler, J., suppressed the
evidence on the ground that the purse was an extension of her
person and dismissed the charge. The Detroit Recorder's Court,
Samuel C. Gardner, J., affirmed, finding that the defendant's
mere presence on the premises did not justify the search either
of her person or her effects. The Court of Appeals, D. E.
HOLBROOK, JR., P.J., and C. W. SIMON, JR., J. (DOCTOROFF, J.,
dissenting), affirmed in an unpublished opinion per curiam,
finding the purse was an extension of the defendant's person
and further that because of the failure to demonstrate a special
relationship between the defendant and the premises being
searched, the purse could not be considered a part of the
premises (Docket No. 98200). The people appeal.

In an opinion by Justice LEVIN, joined by Justices BRICKLEY,
CAVANAGH, and ARCHER, the Supreme Court held:

The search of the defendant's purse did not amount to a
search of her person because the purse was not in her posses-
sion, under her control, or in proximity to her during the
execution of the search warrant. The search of the defendant's
purse was permissible as a search of a container in which items
specified in the warrant might be found.

Justice BOYLE, joined by Chief Justice RILEY and Justice
GRIFFIN, stated that the purse was properly searched as a
container located on the named premises that might be used to
conceal the objects designated in the search warrant as items to
be seized.

Generally, a lawful search of a fixed premises extends to the
entire area in which the object of the search may be found and
is not limited by the possibility that separate acts of entry or

opening may be required to complete the search. Consequently, a particular description in a warrant of the place to be searched and the items to be seized necessarily includes a search of all the personal effects of the person occupying the premises if they are containers that may conceal the object of the search. The proper scope of a search is not defined by the nature of the container in which the contraband is secreted; rather, it is defined by the object of the search and the places where there is probable cause to believe that it may be found. The warrant in this case satisfied the Fourth Amendment particularity requirement with regard to the premises to be searched and the things to be seized.

The defendant's purse in this case cannot be considered an extension of her person; rather, it was proper to search her purse as a container that fell within the scope of a lawful search of the premises described in the warrant. The defendant's connection to the premises was more than that of a mere casual or transient visitor who happened to be on the premises at the time it was subject to a lawful search, and it was reasonable for the police to have believed that the defendant's purse might be used as a container to conceal the objects listed in the warrant as items to be seized. The facts evidence more than mere propinquity to the premises and in fact show that the defendant had a special relationship to the person named in the search warrant and to the premises being searched. The defendant's expectation of privacy in a purse not in her possession or under her control must give way to the magistrate's official determination of probable cause.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, for the people.

State Appellate Defender (by *Kim Robert Fawcett*) for the defendant.

LEVIN, J. As set forth in the concurring opinion, the search of Coleman's purse did not amount to a search of her person.[1] The search was permissible

[1] See *post,* p 134.

as a search of a container in which items specified in the warrant might be found.[2]

Because the search of Coleman's purse was not a search of her person, there is no need to consider *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), *People v Arterberry,* 431 Mich 381; 429 NW2d 574 (1988), or the other authorities cited in the concurring opinion concerning a search of a person.

Reversed and remanded.

BRICKLEY, CAVANAGH, and ARCHER, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring*). In this case, we are asked to determine whether a valid warrant authorizing the search of particularly described premises and the seizure of particularly described items, but not a personal search of the defendant, includes within its scope a search of the defendant's purse located on the premises.

Under the facts of the instant case, we would hold that the defendant's purse was properly searched as a container located on the named premises that might be used to conceal the objects designated in the search warrant as items to be seized. We reject the lower courts' findings that the purse was an extension of the defendant's person and thus outside the scope of the premises warrant. The purse was not on the defendant's person, under her control, or in proximity to her person during execution of the warrant. Moreover, the facts show that the defendant's connection to the searched premises was more than that of a mere casual or transient visitor, and her purse was located in a place where a casual visitor would not be expected to leave her belongings.

---

[2] *Id.*

We would reverse the decisions of the Court of Appeals, the Detroit Recorder's Court, and the 36th District Court and remand this case to the district court for proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS

On the basis of an affidavit stating that there was drug trafficking at a single family residence located at 17399 Edinbough, Detroit, Michigan, a warrant was issued on March 2, 1984, authorizing a search of the entire premises and the seizure of

cocaine, illegally possessed firearms, narcotic paraphernalia, narcotic proceeds, items used to assist in the trafficking of controlled substances, bills, papers or other items establishing residency or control of the named location and the person of Horace Wade . . . .

The search was executed that same day.

Although the police knocked and announced their presence and purpose, they had to gain entry by force. Once inside, they discovered a padlocked exterior-type door preventing access to the upstairs portion of the premises. The police could hear people upstairs and the repeated flushing of a toilet. They knocked on the door and, after a delay, forced entry. They encountered Horace Wade at the top of the staircase and could still hear the toilet flushing. The entire second floor consisted of one room, containing a nightstand, a bed, a dresser, a closet, and, directly opposite the stairs, a bathroom.

The defendant, Era May Coleman, was positioned outside the closed bathroom door in the company of a Mr. Glass. When the police opened the bathroom door, they discovered cocaine residue

floating in the air and on the floor around the toilet. They also discovered two plastic bags on the ground directly outside the partially open bathroom window.

A search of the bedroom and dresser revealed a triple beam scale with cocaine residue on it, four packages of cocaine in powder and rock form, various drug paraphernalia, and four firearms. On the top of the nightstand, the police confiscated what appeared to be records of narcotics transactions. A purse, later identified as the defendant's, was located on the nightstand next to those records.

A search of the purse revealed identification of Era May Coleman and "various notebooks which appear[ed] to show alleged narcotics transactions and various materials and substances that would indicate use of cocaine by way of freebasing." On the basis of this evidence, the defendant was charged with possession with the intent to deliver less than fifty grams of a mixture containing cocaine. MCL 333.7401(2)(a)(iv); MSA 14.15(7401)(2)(a)(iv).

At the preliminary examination, the magistrate found the defendant's purse to be an extension of her person. He relied on *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), and *People v Burbank,* 137 Mich App 266; 358 NW2d 348 (1984), lv den 419 Mich 917 (1984), cert den 469 US 1190 (1985), and suppressed the evidence seized from the defendant's purse and dismissed the charge against her. The Recorder's Court affirmed, finding that the defendant's "mere presence . . . did not justify either her search nor [sic] the search of her effects, to wit, her purse."

The Court of Appeals, in a two to one decision, affirmed the rationale and holding of the lower court. It also distinguished *People v Stewart,* 166

Mich App 263; 420 NW2d 180 (1988), which upheld the search of the purses of two employees as containers on the premises which might contain the items named in the premises search warrant. The majority in *Coleman*,[1] found that, unlike *Stewart,* the prosecution had failed to demonstrate a special relationship between the defendant and the home being searched. Thus, the purse could not be considered a part of the premises.

Judge DOCTOROFF dissented, asserting that *Ybarra* and its progeny did not control the result in *Coleman* because the defendant's person was not searched, nor did she have possession or control of her purse. Furthermore, Judge DOCTOROFF found that under the facts of the instant case, the "evidence is sufficient to show that defendant had a special relationship to the person named in the search warrant and to the home being searched." Accordingly, he would have reversed the lower court decision and remanded the case.

On April 11, 1989, this Court granted the people's application for leave to appeal limited to the issue whether the search of defendant's purse pursuant to a search warrant was permissible.[2]

## II. ANALYSIS

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[1] *People v Coleman,* unpublished opinion per curiam of the Court of Appeals, decided September 9, 1988 (Docket No. 98200).
[2] 432 Mich 892 (1989).

This prohibition against general warrants and general searches serves "as a protection against unjustified intrusions on privacy." *Horton v California,* 495 US —; 110 S Ct 2301, 2310; 110 L Ed 2d 112 (1990). In *Maryland v Garrison,* 480 US 79, 84; 107 S Ct 1013; 94 L Ed 2d 72 (1987), the United States Supreme Court emphasized that the particularity requirement of the Warrant Clause,

> [b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, . . . ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

The warrant in the instant case satisfied the particularity requirement with regard to the premises to be searched and the things to be seized. Therefore, our inquiry focuses on the question whether the warrant was reasonably executed, i.e., whether the search of the defendant's purse exceeded the scope of the warrant to search the described premises. More narrowly, we must decide if, under these facts, the search of defendant's purse constituted a personal search outside the scope of the premises search warrant or the search of a container located on the described premises that might be considered a plausible repository for the objects described in the warrant and thus within the scope of the warrant.

We begin by observing the United States Supreme Court's clarification in *United States v Ross,* 456 US 798, 820-821; 102 S Ct 2157; 72 L Ed 2d 572 (1982):

> A lawful search of fixed premises generally ex-

tends to the entire area in which the object of the
search may be found and is not limited by the
possibility that separate acts of entry or opening
may be required to complete the search. Thus, a
warrant that authorizes an officer to search a
home for illegal [drugs] also provides authority to
open closets, chests, drawers, and containers in
which the [drugs] might be found.

Consequently, a particular description of the place
to be searched and the items to be seized necessar-
ily includes a search of all the personal effects of
the person occupying the premises if they are
containers "that may conceal the object of a
search authorized by a warrant . . . ; the individ-
ual's interest in privacy must give way to the
magistrate's official determination of probable
cause." *Id.* at 823.[3]

The defendant argues, however, that her status
as a nonresident, unnamed in the search warrant,
places her belongings found on the described prem-
ises, but not in her possession or control, outside
the scope of a warrant authorizing the search of
those premises. The 36th District Court, the De-
troit Recorder's Court, and the Court of Appeals
agreed with the defendant. They found the defen-
dant's purse to be an extension of her person and
thus held its search, like that of defendant's per-
son, was outside the scope of the premises search
warrant. The lower courts based their decisions to
suppress the evidence seized from the defendant's
purse and the dismissal of the charge against her

---

[3] See *United States v Gomez-Soto,* 723 F2d 649, 652 (CA 9, 1984),
cert den 466 US 977 (1984), where the court upheld the search of the
defendant's "Gucci" briefcase during the execution of a valid search
of his premises. See also *United States v Martinez-Zayas,* 857 F2d 122
(CA 3, 1988), where the court upheld the search of the defendant's
purse during a lawful search of her home.

on *Ybarra v Illinois,* and its progeny.[4]

We would reverse for the reason stated in Judge DOCTOROFF's dissenting opinion in the Court of Appeals, i.e., that the lower courts' decisions extended *Ybarra* and its progeny beyond reasonable limits. In *Ybarra,* a warrant was issued authorizing the search for narcotics on the person of a bartender suspected of selling heroin and a search of the premises of the small public tavern where he was employed. The search of the bartender and the bar did not reveal any illegal substances. However, the police also conducted a *Terry* weapons patdown of everyone in the bar and later returned to search only Ybarra, finding heroin in a cigarette package that they removed from his pants pocket. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

The Court held that the second bodily search of Ybarra, a customer, who was merely present on the premises when the search was executed was beyond the scope of the warrant and thus contravened the Fourth and Fourteenth Amendments.[5] The complaint for the warrant did not allege that the tavern was frequented by persons illegally purchasing drugs or that the informant had ever seen a patron purchase drugs from the named bartender. Therefore,

> a person's mere propinquity to others independently suspected of criminal activity does not, *without more,* give rise to probable cause to search that person. *Sibron v New York,* 392 US 40, 62-63

---

[4] *People v Burbank, supra; People v Hawkins,* 163 Mich App 196; 413 NW2d 704 (1987); *People v Arterberry,* 154 Mich App 1; 397 NW2d 198 (1986), rev'd 431 Mich 381; 429 NW2d 574 (1988).

[5] *Ybarra, supra* at 91-92. The Court also held that the initial *Terry* weapons patdown was not justified because the state was unable to articulate any fact justifying a suspicion that Ybarra was armed and dangerous. Since this first search was unconstitutional, it could not be used to justify the second search. *Id.* at 92-94.

[88 S Ct 1889; 20 L Ed 2d 917 (1968)]. [*Ybarra, supra* at 91. Emphasis added.]

To summarize, Ybarra had no relationship to the premises other than that of a patron or mere visitor present during the execution of the warrant, and that fact alone was not enough to allow a search of his person.

We find *Ybarra* factually distinguishable. In the instant case, the propriety of the search does not rest on a justification to search a person "merely present" on the premises. The search did not involve the defendant's person or even a personal effect in her possession or under her control.[6] In fact, the purse was across the room from the defendant and closer to Horace Wade, the individual named in the search warrant.[7]

Furthermore, contrary to the Court of Appeals conclusion, the fact that the defendant was the only female present in the upstairs bedroom at the time of the search does not of itself mandate a presumption by the police that the purse necessarily belonged to her and thus was justified only if the Fourth Amendment would permit a search of her person. The nature of the container, i.e., that it is a purse or handbag, does not define the scope of the search.[8] As the United States Supreme

---

[6] Other jurisdictions have upheld the search of a visitor's personal effects found on a premises because they were not in the visitor's possession at the time the premises search warrant was executed and were plausible repositories for the object of the search. See *United States v Teller*, 397 F2d 494 (CA 7, 1968), cert den 393 US 937 (1968); *United States v Johnson*, 154 US App DC 393; 475 F2d 977 (1973); *State v Kurtz*, 46 Or App 617; 612 P2d 749 (1980); *Commonwealth v Reese*, 520 Pa 29; 549 A2d 909 (1988) (finding a constitutional difference between the search of one's person and one's personal effects not in his possession or control).

[7] Nor is this a situation where the defendant claimed ownership of the purse at the time in question.

[8] See *State v Nabarro*, 55 Hawaii 583; 525 P2d 573 (1974), which holds that absent notice to the contrary the police may presume all

Court emphasized in *Ross, supra* at 824, the proper scope of a search

> is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found.

Under these facts, we conclude that the defendant's purse cannot be considered an extension of her person. Rather, it was properly searched as a container that fell within the scope of a lawful search of the premises described in the warrant.[9]

*Ybarra* is further distinguished because that decision is based in part on the fact that the police had no reason to believe that the defendant had a connection to the searched premises other than his mere presence as a customer during the warrant's execution at a legitimate business open to the public. The Court found that connection insuffi-

possessions on a searched premises belong to the owner/occupier and not visitors. The *Nabarro* court concluded it was ineffective and unworkable to require police to distinguish between the personal effects of residents and nonresidents; see also *Reese,* n 6 *supra,* and *People v McCabe,* 144 Cal App 3d 827; 192 Cal Rptr 635 (1983).

[9] As the United States Supreme Court observed in *Zurcher v Stanford Daily,* 436 US 547, 560; 98 S Ct 1970; 56 L Ed 2d 525 (1978), reh den 439 US 885 (1978), which was decided in the same term as *Ybarra,* "the seeming innocence" of the property owner cannot be relied upon to foreclose the warrant to search. Rejecting the claim that the Fourth Amendment forbids the search of premises of an occupant not himself implicated in misconduct, the Court emphasized:

> The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought. [*Zurcher* at 556.]

Thus, while an innocent third party's premises can be searched where there is probable cause to believe that the items particularly described in the warrant could be found there, an "innocent" party may not be searched where the sole justification asserted is his presence on public premises. *Ybarra, supra.*

cient to allow a physical search of Ybarra's person. We find under the facts of this case that the police could discern that Coleman's connection to the premises was more than that of a mere casual or transient visitor who happened fortuitously to be on the premises at the time it was subject to a lawful search. We also find it reasonable for the police to have believed that the defendant's purse might be used as a container to conceal the objects listed in the warrant as items to be seized. Therefore, a "search of [her] purse would not exceed the authorization granted by the warrant."[10]

The searched premises was a restricted-entry residence and was identified in the affidavit supporting the warrant as a place of suspected drug trafficking. Both Coleman and her purse were in proximity to the contraband described in the warrant.[11] The purse was located in an upstairs bedroom behind a padlocked door and on a nightstand directly next to the alleged drug records—not a location where a casual visitor or passerby would

---

[10] 2 LaFave, Search & Seizure, § 4.10(b), p 321. It would be permissible to search even the known personal effects of a visitor under facts showing it was reasonable for the police to believe a visitor on the premises had an opportunity to conceal contraband in his personal belongings immediately prior to or during the execution of the premises search warrant. *Id.* See also *McCabe*, n 8 *supra*, and *Johnson*, n 6 *supra*.

[11] Indeed given the facts of this case where cocaine residue and drug paraphernalia were visible upon entry, it would appear that under the rationale of this Court's unanimous decision in *People v Arterberry*, n 4 *supra* at 383-384, the defendant could have been arrested for loitering in a place of illegal occupation or business, MCL 750.167(j); MSA 28.364(j), and searched incident to that arrest.

The *Arterberry* Court contrasted the facts of that case, where the police had obtained a warrant allowing the search of a private residence and a named individual for controlled substances, from the facts in *Ybarra*. Specifically, "the police in *Ybarra* did not have probable cause to arrest the defendant *before* engaging in the challenged search." "[They] did not, while searching pursuant to the warrant, discover controlled substances," they "had no information that the bar itself was a dope house," "the site of the search was . . . not a restricted-entry private residence," "[and] there was no reason to believe that the patrons of the bar were involved in criminal activity." *Arterberry* at 386. (Emphasis added.)

be expected to leave her belongings.[12] Coleman was discovered positioned directly outside the upstairs bathroom where the police had heard repeated flushing and discovered both the air and the floor surrounding the toilet filled with cocaine residue. The total atmosphere suggested an attempt to conceal evidence subject to the warrant. These facts also show that the defendant had more control over the premises than would a casual visitor or passerby.[13] Therefore, we agree with Judge DOCTOROFF's conclusion that "[t]hese facts evidence more than 'mere propinquity' to the premises" and in fact "show that defendant had a special relationship to the person named in the search warrant and to the home being searched." Consequently, we find that the Court of Appeals erroneously distinguished *People v Stewart, supra.*[14]

### CONCLUSION

In summary, we conclude that the defendant's expectation of privacy in a purse not in her possession or under her control "must give way to the magistrate's official determination of probable

[12] These facts are similar to those in *People v Stewart, supra.*

[13] Similar facts were found controlling in *Johnson,* n 6 *supra; McCabe,* n 8 *supra; United States v Neet,* 504 F Supp 1220 (D Colo, 1981).

[14] In *Stewart,* the Court of Appeals upheld the search of two female employees' purses as being containers within the scope of a warrant authorizing a search of the lounge where they worked. The Court found that the defendants had a special connection to the searched premises because not only were they employees and thus not mere visitors, but their purses were found in places not generally accessible to the public.

See *United States v Micheli,* 487 F2d 429, 431-432 (CA 1, 1973), the lead case utilizing an analytic approach which examines the relationship between a defendant and the named premises and criticizing those courts that rely solely on a "within-the-possession-of-the-defendant approach." See also *United States v Gray,* 814 F2d 49 (CA 1, 1987).

cause." *Ross, supra* at 823. As the *Ross* Court observed, the practical considerations involved in prohibiting the police from immediately searching a container under circumstances such as these would actually exacerbate the intrusion on privacy interests by requiring that in each case where the outward appearance of the container suggested that it might belong to someone for whom there was no independent probable cause, the container would have to be detained until a warrant was obtained. Under the facts of this case, it was error for the lower courts to find the search of the defendant's purse improper on the ground that it was an extension of her person. Rather, it constituted the search of a container located on the described premises that could plausibly conceal the objects described in the warrant as items to be seized. Consequently, we would reverse the decisions of the Court of Appeals, the Detroit Recorder's Court, and the 36th District Court and would remand this case to the district court for proceedings consistent with this opinion.

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.