PEOPLE v DAUGHENBAUGH

Docket No. 124254. Submitted March 10, 1992, at Lansing. Decided
April 6, 1992, at 10:15 A.M.

Martin D. Daughenbaugh was convicted by a jury in the Clinton
Circuit Court, Randy L. Tahvonen, J., of four counts of armed
robbery and four counts of possession of a firearm during the
commission of a felony. He then pleaded guilty of being an
habitual offender, fifth offense, and was sentenced accordingly.
On appeal, the defendant claims that the trial court erred in
granting joinder, contending that he was entitled to three
separate trials.

The Court of Appeals *held:*

1. Pursuant to MCR 6.120(B), a court, on a defendant's
motion, must sever unrelated offenses for separate trials. Two
offenses are related for purposes of the court rule if they are
based on the same conduct or a series of connected acts or acts
constituting part of a single scheme or plan. The four robberies
in this case, all of which allegedly were committed by a man
wearing a blue hooded sweatshirt and blue jeans and carrying
a blue duffel bag and sawed-off shotgun, were not related for
purposes of MCR 6.120(B) and should have been the subject of
separate trials. The trial court erred in granting the prose-
cutor's motion for joinder, thereby requiring reversal of the
defendant's convictions and remand for further proceedings.

2. Under MRE 404(b), evidence of another bad act by a
defendant may be offered to prove identity only where the
circumstances and manner in which the two crimes were
committed are so nearly identical in method as to earmark the
charged offense as the handiwork of the defendant. The com-
monality of circumstances must be so unusual and distinctive
as to be a signature, and thereby justify an inference by an
ordinarily reasonable juror that both crimes were committed by

REFERENCES

Am Jur 2d, Evidence §§ 320 *et seq.;* Searches and Seizures §§ 111-
113; Trial §§ 149 *et seq.*

See the Index to Annotations under Containers; Joint and Separate
Trial; Same or Similar Acts or Matters; Search and Seizure;
Severance of Action.

the same person. In any one of the separate trials on remand, evidence that other robberies were committed by a man wearing a blue hooded sweatshirt and blue jeans and carrying a sawed-off shotgun and blue duffel bag would not be admissible under MRE 404(b) because it does not establish a signature crime.

3. The trial court did not err in admitting evidence of the contents of a locked safe that was seized in the execution of a warrant for a search of the defendant's home and that was opened without a warrant. A warrant authorizing the search of premises also authorizes the search of containers therein that might contain the items named in the warrant.

Reversed and remanded.

1. CRIMINAL LAW — TRIAL — SEVERANCE.

On a defendant's motion, a trial court must sever unrelated offenses for separate trials; two offenses are related if based on the same conduct or a series of connected acts or acts constituting part of a single scheme or plan (MCR 6.120[B]).

2. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS — PROOF OF IDENTITY OF PERPETRATOR.

Evidence of another bad act by a defendant may be offered to prove identity only where the circumstances and manner in which the two crimes were committed are so nearly identical in method as to earmark the charged offense as the handiwork of the defendant; the commonality of circumstances must be so unusual and distinctive as to be a signature, and thereby justify an inference by an ordinarily reasonable juror that both crimes were committed by the same person (MRE 404[b]).

3. SEARCHES AND SEIZURES — SEARCH WARRANTS — PREMISES — CONTAINERS.

A warrant authorizing the search of certain premises also authorizes the search of containers therein that might contain the items named in the warrant.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Charles D. Sherman,* Prosecuting Attorney, and *Kevin D. Hayes,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Ronald J. Bretz*), for the defendant on appeal.

Before: SHEPHERD, P.J., and SAWYER and CON-NOR, JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of four counts of armed robbery, MCL 750.529; MSA 28.797, and four counts of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He thereafter pleaded guilty of being a habitual offender (fifth felony offense). MCL 769.12; MSA 28.1084. He was sentenced to two terms of forty-five to seventy-five years in prison and two terms of life in prison for the armed robbery convictions and to four terms of two years in prison for the felony-firearm convictions. He now appeals and we reverse.

Briefly, this case involved the "Blue Bandit" robberies in the Lansing area during 1988. Apparently, the robber was dubbed the "Blue Bandit" because it was alleged that during the robberies he frequently wore a blue ensemble consisting of a blue hooded sweatshirt and blue jeans. The instant convictions involve four different robberies and three different victims. At issue are a July 4, 1988, robbery of Connie Robison while she was working at the Fort Bernie Party Store, a July 17, 1988, robbery of Jessica Parks at a Checker gas station, another robbery of Parks at the gas station on July 22, and a September 27, 1988, robbery of Doug Herig at an Action Automotive store.

Defendant was originally charged in three separate informations (one for each victim, the two robberies at the Checker gas station being charged in the same information). The prosecutor's motion for the matters to be consolidated for trial was granted over defendant's opposition.

Defendant first contends that he was entitled to

a separate trial on each of the informations.[1] We agree. A criminal defendant is entitled to separate trials on unrelated offenses under MCR 6.120(B):

> On the defendant's motion, the court must sever unrelated offenses for separate trials. For purposes of this rule, two offenses are related if they are based on
> (1) the same conduct, or
> (2) a series of connected acts or acts constituting part of a single scheme or plan.

The court rule is a codification of the Supreme Court's earlier decision in *People v Tobey,* 401 Mich 141; 257 NW2d 537 (1977). In *Tobey,* the Court held that the defendant was entitled to separate trials on two charges of sale of heroin. The two sales were made twelve days apart, though to the same undercover police agent. The second sale had been arranged following the first sale. *Id.* at 144. The Court explained what constitutes the same conduct or a series of connected acts that would permit joinder for trial:

> The commentary accompanying the [ABA Standards Relating to Joinder and Severance] explains that "same conduct" refers to multiple offenses "as where a defendant causes more than one death by reckless operation of a vehicle." "A series of acts connected together" refers to multiple offenses committed "to aid in accomplishing another, as with burglary and larceny or kidnapping and robbery." "A series of acts . . . constituting parts of a single scheme or plan" refers to a situation "where a cashier made a series of false entries and reports to the commissioner of banking, all of which were

---

[1] Defendant apparently concedes that all of the charges arising from the two armed robberies of Jessica Parks on July 17 and 22, 1988, may be tried together inasmuch as he only argues that he was entitled to three separate trials, not four.

designed to conceal his thefts of money from the bank." [*Tobey, supra* at 151-152.]

The Court gave as illustrations of properly joined cases the maintaining of a gaming room table and the keeping of a place where gambling was permitted, the acts constituting the offenses having occurred within an hour and a half and having arisen out of substantially the same transaction, and the case of a person escaping prison, stealing an automobile, and taking hostages. *Id.* at 152.

The acts here are even less closely related than were those in *Tobey*. Thirteen days passed between the Robison robbery and the first Parks robbery, while more than two months passed between the second Parks robbery and the Herig robbery. With the exception of the two Parks robberies, to which defendant apparently does not object to joinder, the crimes involved different victims. There is no indication that one robbery was committed to facilitate another.

The prosecutor advances the theory that severance is not required where evidence of the other crimes would be admissible as other bad-acts evidence under MRE 404(b). We disagree. Initially, the prosecutor must establish that joinder is permissible where the evidence of the other crimes would be admissible in separate trials under MRE 404(b). A number of reasons exist to reject this argument. First, there is the principle of stare decisis and the requirement of adherence to the court rule. Neither *Tobey* nor the court rule sets forth any exception to a criminal defendant's absolute right to severance of unrelated offenses. Both provide an absolute right of a criminal defendant to insist on separate trials. Thus, it is for the Supreme Court, not this Court, to carve out exceptions to this rule.

Second, the prosecutor's theory has an underlying assumption that there is no difference between charging a defendant with a crime and merely presenting evidence that the defendant committed another, uncharged (in that particular trial) offense. The fact that a defendant is formally faced in the same trial with additional charges does have an effect greater than if evidence of other (uncharged) offenses are presented. The defendant is cast as a bad person by the sheer number of counts in the information. The jurors are afforded greater room for compromise by the larger number of counts (i.e., they might agree to convict on some counts and acquit on others, an option not readily available when fewer counts are presented for the jury's consideration). Finally, the amount of evidence that the prosecutor would be permitted to introduce may well be greater if the prosecutor is attempting to prove the defendant's guilt of the additional charge than if merely trying to show that the defendant committed the other (uncharged) bad act.

For the above reasons, we conclude that the trial court improperly joined the charges for trial. However, because the issue of the admissibility of the other bad-acts evidence is likely to reoccur on remand, we will also address that issue.

The Supreme Court in *People v Golochowicz,* 413 Mich 298, 309; 319 NW2d 518 (1982), set forth the factors to be considered in admitting evidence of other bad acts:

> (1) there must be substantial evidence that the defendant actually perpetrated the bad act sought to be introduced; (2) there must be some special quality or circumstance of the bad act tending to prove the defendant's identity or the motive, intent, absence of mistake or accident, scheme, plan

or system in doing the act and, in light of the slightly different language of MRE 404(b) we add, opportunity, preparation and knowledge; (3) one or more of these factors must be material to the determination of the defendant's guilt of the charged offense; and (4) the probative value of the evidence sought to be introduced must not be substantially outweighed by the danger of unfair prejudice.

The prosecutor cites identity as being the permissible purpose for the admission of the other bad-acts evidence. However, the prosecutor does not explain exactly how evidence of one crime would establish defendant's identity as the perpetrator of one of the other crimes. Presumably, the alleged connection is that the perpetrator of each of the robberies allegedly wore blue jeans and a blue sweatshirt and used a sawed-off shotgun in the perpetration of the robbery.

However, the Court in *Golochowicz* took great care to explain the limited availability of similar-acts evidence to establish identity:

Where, as in this case, the only conceivable justification for admission of such similar-acts evidence is to prove the identity of the perpetrator, the link is forged with sufficient strength to justify admission of evidence of the separate offense only where the circumstances and manner in which the two crimes were committed are "[s]o nearly identical in method as to earmark [the charged offense] as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. *The [commonality of circumstances] must be so unusual and distinctive as to be like a signature.*" McCormick, Evidence (2d ed), § 190, p 449.

It is because of the combined value of those two factors, the unique and uncommonly distinctive

style employed by the defendant in committing the "substantially proved" uncharged similar offense, and the same distinctive *modus operandi* employed in the charged offense, that the jury is permitted to infer, if it believes the evidence, that both crimes were the handiwork of the same person, the defendant.

It will not suffice that the "like act" be simply another crime of the same general category or even of the same specific character. It will not do simply to show, for example, that the defendant committed another murder. That information is likely to be used by an ordinarily reasonable juror for the very purpose for which evidence of bad character is required to be excluded, to show that the accused is a bad person who has murdered before and to invite the inference that he probably did so in this case. *It is the uniqueness and the distinctiveness with which both crimes were committed, combined with the proof that the defendant committed the "like act", that is the key. . . .*

Consequently, if the trial court determines that there is substantial evidence that the defendant in fact committed the other or uncharged crime, it must then turn to the task of determining whether the manners or systems employed by the perpetrator of the uncharged crime and the crime in question were sufficiently "like" or "similar" and involved such distinctive, unique, peculiar or special characteristics as to justify an ordinarily reasonable juror to infer that both were the handiwork of the same person. If the trial court concludes the evidence is of that character, it may be admitted. If not, it is excluded. [*Golochowicz, supra* at 310-312; emphasis added.]

Again, the prosecutor does not explain how the proof of the other bad acts establishes defendant's identity as the perpetrator of a particular armed robbery, although it is the prosecutor's burden to do so. *Id.* at 315. However, at the hearing in the trial court, the prosecution did advance the theory

that it would establish identity in that each of the victims could identify defendant as the perpetrator and that the perpetrator of each of the robberies was the same individual, whom the media had dubbed the "Blue Bandit" because there was a number of armed robberies in the Lansing area committed by an individual wearing blue jeans and a blue sweatshirt, carrying a blue gym or duffel bag, and using a sawed-off shotgun.

We are not convinced that this establishes a "signature crime" as required by *Golochowicz.* There is nothing unique or unusual about wearing blue jeans and a sweatshirt, or using a sawed-off shotgun to commit a robbery. These are rather common items; there is nothing out of the ordinary about them to establish a signature.

The "signature" nature of the crimes is further weakened upon examination of the victims' testimony. Connie Robison, the victim of the July 4 robbery of the Fort Bernie Party Store, although identifying defendant as the perpetrator, described him as wearing blue jeans and a *black* sweatshirt. She made no mention of a blue gym bag. Jessica Parks, the victim in the two Checker gas station robberies, while testifying that defendant had worn a blue sweatshirt during the July 17 robbery, merely described the bag as being a dark-colored duffel bag. With respect to the July 22 robbery, she testified that defendant was wearing a blue sweatshirt and carrying a black canvas bag. The manager on duty during the July 22 robbery described the perpetrator as wearing a blue sweatshirt and gray sweatpants, though he did describe seeing a blue gym or duffel-type bag. Turning to the testimony of Doug Herig, he did describe the robber as wearing a blue sweatshirt and carrying a blue duffel bag. Jeanette Langer, Doug Herig's

co-worker at Action Auto, gave a similar identification.

To be a "signature" crime, there must be a distinctive nature to how the crimes are committed and there must be a clear connection between the other crimes that leads to the conclusion that they must have been committed by the same person. In the case at bar, the supposed connection that shows that the crimes were committed by the "Blue Bandit" is not borne out by the testimony. The witnesses from crime to crime simply did not consistently testify regarding the defendant's appearance: the sweatshirt differed in color from black to blue, defendant was alternately wearing blue jeans or gray sweatpants, and the gym bag was described in different colors or not mentioned at all in various crimes.

Accordingly, we conclude that the other bad-acts evidence would not be admissible.[2]

We also address another issue that will reoccur on remand. Defendant argues that the trial court erroneously admitted evidence seized from a locked safe found in his home. We disagree. The police executed a search warrant at defendant's home. The warrant authorized the police to search defendant's residence for, and seize, the following items:

> [B]lue hooded sweatshirts, nylon leg hose of varying colors, white or light colored pants, tennis shoes, gloves, gym bags, blue gym bag, hacksaws, hooded or unhooded grey sweatshirts, brown work-boots, brown gloves, hacksaw blades, any type of

[2] This also distinguishes this case from *People v James Smith,* 119 Mich App 431, 434; 326 NW2d 533 (1982), where this Court stated that an improper joinder would be harmless where some evidence would be admissible in both trials. Even assuming that *Smith* was correctly decided, it would not apply here because the other bad-acts evidence would not be admissible in the separate trials.

device for cutting metal or wood, wood and metal shavings, sawed-off shotgun or rifles, sawed-off shotgun or rifle barrels or stocks, "NOVATEL" cellular phone #082089, telephone receiver and phone grey or tan in color, items showing possession and/or control of the above named premises, including but not limited to: bills, receipts, letters, correspondence, photographs, fingerprints, leases, tax or property records, business envelopes with or without business addresses.

The police found and seized a number, but not all, of these items during their search. They also seized a locked floor safe, although it was not named in the warrant. They thereafter opened the safe at the police station. The safe contained several items named in the warrant, as well as a number of items not named in the warrant.

Defendant argues that the seizure of the safe was unlawful because the safe was not named in the warrant and the police needed to obtain, but did not, an additional search warrant before searching the contents of the safe. We disagree.

A warrant authorizing the search of a premises authorizes the search of containers within the premises that might contain the items named in the warrant. *People v Coleman,* 436 Mich 124; 461 NW2d 615 (1990). We can see no basis for distinguishing between locked and unlocked containers, nor does defendant provide such a basis. If there exists sufficient probable cause to justify entry into a home to search for evidence, it is certainly justifiable to authorize entry into a locked container within that home where that container could contain any of the items sought. There is nothing to be gained by requiring a second warrant. If the first warrant was justified, so would be the second.

For the above reasons, we conclude that the

trial court erred in granting joinder of the trials. Accordingly, defendant's convictions are reversed.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.