15 P.3d 771

**In re DAYVID S.**

No. 1 CA–JV 00–0112.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 21, 2000.

Janet Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Richard M. Romley, Maricopa County Attorney By Rene Williams, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Dean W. Trebesch, Maricopa County Public Defender By Amy L. Sitver, Deputy Public Defender, Mesa, Attorneys for Appellant.

## OPINION

FIDEL, Judge.

¶ 1 Dayvid S. sold an undercover officer a crushed peanut packaged to resemble crack cocaine. He appeals from his adjudication of delinquency for possession of an imitation controlled substance with intent to distribute, a class 6 felony. His appeal presents these issues: (1) whether the evidence sufficed to establish (a) that the crushed peanut constituted an "imitation controlled substance" as defined by A.R.S. § 13–3451(4), or (b) that Dayvid had "intent to distribute" an imitation controlled substance as required by A.R.S. § 13–3453(A); and (2) whether A.R.S. § 13–3451(4) defines "imitation controlled substance" so imprecisely as to be unconstitutionally vague or overbroad. For the following reasons, we affirm.

### I. SUFFICIENCY OF THE EVIDENCE

¶ 2 At approximately 9:00 on a January evening, on a street corner in Mesa, an undercover officer approached a group of boys and asked to be "hooked up" with "a twenty." Dayvid showed the officer two cellophane-wrapped packages, each containing an off-white crumbled substance. "Is this shit good?" asked the officer. Dayvid answered, "Yeah." The officer chose the larger of the two packages and gave Dayvid $20.00. The officer walked away, signaled for other officers to move in, and, as Dayvid began to ride off on his bike, grabbed Dayvid and placed him under arrest. "It's nuts, just nuts," said Dayvid. And in fact it was just peanuts, crushed to resemble crack cocaine and wrapped, as crack cocaine is packaged, in cellophane with burnt, twisted ends.

¶ 3 Dayvid argues that the evidence does not suffice to establish two elements of the offense: (a) that what he possessed was an imitation controlled substance and (b) that he possessed it with intent to distribute.

¶ 4 In reviewing the sufficiency of the evidence, we examine the evidence in the light most favorable to sustaining the judgment, and we consider whether the evidence sufficed to permit a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *Maricopa County Juv. Action No. JT9065297*, 181 Ariz. 69, 82, 887 P.2d 599, 612 (1994).

¶ 5 Section 13–3453(A) provides, "It is unlawful for a person to manufacture, distribute or possess with intent to distribute an imitation controlled substance." "Imitation controlled substance" is defined in A.R.S. § 13–3451(4) as

a drug, substance or immediate precursor which does or does not contain a controlled substance that by texture, consistency or color or dosage unit appearance as evidenced by color, shape, size or markings, apart from any other representations, packaging or advertisements, would lead a reasonable person to believe that the substance is a controlled substance but it is a counterfeit preparation.

¶ 6 An "imitation controlled substance" is thus essentially one that so closely

resembles a controlled substance as to constitute a counterfeit. What Dayvid sold the officer met that description. The officer, an undercover narcotics unit detective and veteran of hundreds of drug-related arrests, described the substance as a "white or dark white or brown, rocky substance ... somewhat crumbled." During the sale, according to the officer, he believed that he was buying crack cocaine because it "felt and looked, at the time, like it was crack cocaine." Even after Dayvid told him it was "just nuts," and after examining his purchase more closely, the officer thought "[i]t still looked pretty darn close to crack cocaine." In fact, he told Dayvid, "it was the best looking fake stuff [he] had seen." This testimony supports the conclusion that the substance, by texture, consistency, and appearance, met the statutory definition of an imitation controlled substance.

¶ 7 Moreover, if evidence of texture, consistency, and appearance did not suffice to establish that Dayvid sold the officer an imitation controlled substance, the court was entitled under § 13-3452 to consider the representations that Dayvid made, the way he packaged the substance, and any evasive action that he took to avoid detection. Section 13-3452 provides:

A. If a dosage unit is in the form of a powder or liquid or if the appearance of a dosage unit is not otherwise reasonably sufficient to establish that a substance is an imitation controlled substance, ... the representations made in connection with the substance or drug shall be considered in addition to all other logically relevant factors in determining whether the substance or drug is an imitation controlled substance....

B. For the purposes of this section, representations made in connection with any substance or drug whose status is uncertain include:

1. *Statements* made by an owner or by anyone else in control of the substance or drug concerning the nature of the substance or drug, or its use or effect.

. . .

3. Whether the substance or drug is *packaged* in a manner normally used for imitation controlled substances....

4. *Evasive tactics or actions* utilized by the owner or person in control of the substance or drug to avoid detection by law enforcement agencies.

(Emphasis added.)

¶ 8 Dayvid's statements to the officer advanced the imitation of a controlled substance, for he offered the crushed peanut concoction in response to a request for "a twenty"—a street term for crack cocaine—and represented what he was selling to be "good shit." The substance was packaged, as we have indicated, in cellophane, with the top of the wrapper twisted and burned, a form of packaging suggestive of crack cocaine. Also, when detectives moved in to make an arrest, Dayvid took evasive action, riding away on his bicycle to avoid apprehension. Each of these factors supports the determination that the substance was an "imitation controlled substance" as statutorily defined.

¶ 9 This same evidence regarding statements, packaging, and evasive action establishes Dayvid's "intent to distribute"—an additional element of the crime. *See* A.R.S. § 13-3453(A). Moreover, according to Dayvid, prior to the sale, he saw the officer drive by and told his friends, "Watch that guy stop and ask if they can buy drugs off us." Though Dayvid told his friends they would sell the peanuts to the officer as "a joke," the evidence supported the conclusion that he accepted the officer's $20 in earnest. Given the evidence, the juvenile court could have found that Dayvid knew the substance he possessed and delivered to the officer was an "imitation controlled substance," that he intentionally presented the crushed peanut as a counterfeit of crack cocaine, and that he intended to pass the peanut off to the officer as crack cocaine. We thus find sufficient evidence to support the juvenile court's finding of delinquency.

## II. Vagueness and Overbreadth

¶ 10 Dayvid claims that the definition of "imitation controlled substance" in A.R.S. § 13–3451(4) is unconstitutionally vague because it fails to include a definition of the term "substance." Dayvid argues that the term "substance" lacks specificity and encourages arbitrary and discriminatory enforcement. We disagree.

¶ 11 A statute is void for vagueness if it fails to give persons of average intelligence reasonable notice of what behavior is prohibited, or is drafted in a way that allows for arbitrary and discriminatory enforcement. *State v. Lefevre*, 193 Ariz. 385, 390, ¶ 18, 972 P.2d 1021, 1026 (1998). Whether a statute is unconstitutionally vague is generally determined by examining its application to the facts of the particular case. *Norton v. Superior Court*, 171 Ariz. 155, 157, 829 P.2d 345, 347 (1992).

¶ 12 "Substance" is defined as "a. That which has mass, occupies space, and can be perceived by the senses: MATTER: b. A material of a particular kind or constitution." *Webster's II New College Dictionary* 1099 (1999). Though the term is broad by definition, this does not make it vague. The statutory scheme necessarily requires a broad term, irreducible in form, to allow for the wide array of materials that might be fashioned into a counterfeit of a controlled substance. The crime itself is limited, however, by the necessity that the substance be an *imitation controlled* substance—one that "by texture, consistency or color or dosage unit appearance as evidenced by color, shape, size or markings, ... would lead a reasonable person to believe ... is a controlled substance, but it is a counterfeit preparation." A.R.S. § 13–3451(4).

¶ 13 There is nothing vague about that definition, and it perfectly fits this case. Be-

cause a person of ordinary intelligence could have determined that Dayvid's conduct fell within the class of acts prohibited by A.R.S. § 13–3451(4), the statute is not unconstitutionally vague.

¶ 14 Dayvid also argues that A.R.S. § 13–3451(4) is overbroad. He argues that by permitting any "substance" to be an imitation controlled substance, the statute includes nearly every possible physical item. Because of the statutory narrowing elements we have described, however, we find no overbreadth. The essence of the crime is imitation, not substantive identity. The crushed peanut sold by Dayvid falls within the definition of an "imitation controlled substance" not because of its substantive identity as a peanut—a usually benign legume—but because its texture, consistency, and dosage unit appearance, bolstered by its packaging and Dayvid's representations and conduct, all demonstrate its use to imitate a controlled substance.

## Conclusion

¶ 15 Finding no constitutional deficiency in the statutory definition of an "imitation controlled substance" and finding sufficient evidence to support the juvenile court's adjudication and disposition of this matter, we affirm.

CONCURRING: EDWARD C. VOSS, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.