174 P.3d 282

**In re TIFFANY O.,**

**No. 1 CA–JV 06–0094.**

Court of Appeals of Arizona,
Division 1, Department A.

Dec. 24, 2007.

Review Denied June 3, 2008.

Terry Goddard, Attorney General and Andrew P. Thomas, Maricopa County Attorney, By Linda Van Brakel, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Sandra L. Massetto, Esq., Phoenix, Attorney for Appellant.

SNOW, Judge.

¶1 Tiffany O. ("Appellant") appeals from the juvenile court's finding that she is delinquent based on her possession of a pipe that she used or intended to use to smoke marijuana. We have jurisdiction pursuant to Arizona Revised Statutes section 8–235(A) (2007). Because the juvenile court erred when it admitted the pipe into evidence we vacate the finding and remand to the juvenile court.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 During the early afternoon of June 21, 2004, Appellant, then fourteen years old, and her mother got into an argument. When Appellant began to leave the home, Mother told her that if she went "out that door" Mother would phone the police. When Appellant nevertheless left the home Mother called 9–1–1. Mother followed her daughter. Two police officers, Officer Robert Stewart and Officer Brian Lilly, responded to the call. Officer Stewart testified that the call was an emergency high traffic for domestic violence and that the report was that the Appellant wanted to kill herself. After Mother flagged down the officers as they were arriving and pointed out Appellant to them, Officer Stewart approached Appellant on the street and told her to stop. She did so. Appellant was carrying a closed blue purse. Officer Stewart remembered nothing about the purse other than it was blue. He immediately seized and opened Appellant's purse upon the hood of his patrol car. He testified that he was searching the purse for a weapon with which Appellant might harm herself or Officer Stewart.

¶ 3 Although the purse contained no weapon, it did contain a marijuana pipe. Officer Stewart showed it to Appellant's mother, who was present at the scene. He further testified to an ensuing discussion between Appellant and her mother which he overheard. Officer Stewart and Officer Lilly subsequently returned to Appellant's home with Appellant and her mother while Mother searched the home for drugs. None were found. Mother requested that a drug dog be brought to the scene and that Appellant be tested for drugs. The officers indicated this was not possible. A petition for delinquency was subsequently filed against Appellant. She was adjudicated responsible for a class one misdemeanor for the possession of drug paraphernalia.[1] She has appealed. Because the court erred in admitting into evidence the pipe and the police officer's testimony re-

garding the pipe, we reverse the juvenile court's ruling.

## ANALYSIS

¶ 4 The State argues on appeal that Appellant failed to sufficiently object to the introduction of the marijuana pipe to preserve the issue for appeal. It further asserts that even if the issue was preserved for appeal, the search of Appellant's purse was justified by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We disagree.

### I. The Objection Was Sufficiently Preserved.

¶ 5 When the State moved to admit the pipe into evidence, Appellant's counsel said only "Objection." The court then stated "Exhibit 1 is admitted," and the hearing proceeded. According to Arizona Rule of Evidence 103, to preserve the issue for appeal, an objection needs to be made with specificity unless the ground for it is apparent from the context. The purpose of the rule "is to allow the adverse party to obviate the objection and to permit the trial court to intelligently rule on the objection and avoid error." *Thompson v. Better–Bilt Aluminum Prod. Co., Inc.*, 187 Ariz. 121, 129, 927 P.2d 781, 789 (App.1996).

¶ 6 In this case, in its direct examination before moving the pipe's admission into evidence, the State only asked the officer about his justification for seizing the purse, not for searching it. But on its own, the court inquired why Officer Stewart had not considered the situation safe once he had taken the purse from Appellant and why he had not given the purse to Mother. We therefore find that the objection in context was sufficient to preserve for appeal the issue of the permissibility of the search of the purse.

### II. The Officer's Search Of The Purse Was Not Justified Under *Terry* Once He Had Seized The Purse.

¶ 7 Appellant does not contest Officer Stewart's right to detain her under the

---

1. The adjudication was not held until a year and a half after the underlying events. Because Appellant had shown great progress during that

time, the trial court designated the offense as a class one misdemeanor.

circumstances. She does, however, contest Officer Stewart's right under *Terry* to search her purse once he had seized it and it was within the officer's control. " '[S]ubject only to a few specifically established and well-delineated exceptions,' a search is presumed to be unreasonable under the Fourth Amendment if it is not supported by probable cause and conducted pursuant to a valid search warrant." *State v. Gant,* 216 Ariz. 1, 3, ¶ 8, 162 P.3d 640, 642 (2007) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

¶ 8 Under *Terry,* an officer making an investigative stop may frisk an individual for weapons if the officer reasonably suspects that the person may be armed and presently dangerous to the officer or others. 392 U.S. at 30, 88 S.Ct. 1868. The operative legal question under *Terry* is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. 1868. The scope of a protective search is limited to a search for concealed weapons, and "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

¶ 9 In applying this standard, we "defer to the trial court's factual findings absent an abuse of discretion," but review the court's "ultimate legal determination that the search complied with the dictates of the Fourth Amendment" de novo. *State v. Valle,* 196 Ariz. 324, 326, ¶ 6, 996 P.2d 125, 127 (App.2000).

¶ 10 In this case, the facts are not in dispute. Officer Stewart testified to the circumstances, and his testimony was not contested. The facts, as he testified to them, are as follows: (1) the call he was responding to "was an emergency high traffic pertaining to a domestic violence and a female possibly—well, indicating she was trying to kill herself or wanting to kill herself." He also testified that according to the 9–1–1 call Appellant was "completely out of control" and that "the mother had said, she's gonna commit suicide. And she's saying that and do-

mestic violence;" (2) when he responded to the call he "never made it to the apartment complex because the mom waved [him] down;" (3) when he reached Appellant, "she was very agitated, mad, angry, verbal, loud;" (4) when he approached Appellant, he "told her to stop and she did;" (5) he remembers nothing about the purse other than it was blue; (6) he "immediately seized [the] purse due to the totality of the information that she was possibly wanting to commit suicide;" (7) both his partner, Officer Lilly, and Mother were on the scene; (8) he immediately opened the purse and looked in it for "[a]ny type of weapon to harm herself or me;" and (9) the incident took place in the early afternoon.

¶ 11 There is no evidence in the record that the 9–1–1 call mentioned that Appellant had or was threatening anyone with a weapon. There was no sign of a weapon when the officers arrived on the scene, and upon their arrival, they saw no domestic violence or suicide attempt taking place. Officer Stewart testified, however, that the seizure of the purse was justified because when Mother called 9–1–1 she indicated Appellant was suicidal and, therefore, he thought there might be a weapon in the purse with which Appellant might harm either herself or him. We assume, without deciding, that this justifies Officer Stewart's seizure of Appellant's purse.

¶ 12 But the State must also justify the immediate search of the purse after it was in Officer Stewart's control. After the purse's seizure, the danger of Appellant using something in it to harm herself or others was removed. Generally, once a purse is no longer in its owner's possession, a protective search of the purse is not justified pursuant to *Terry. See State v. Schellhorn,* 95 Or. App. 297, 769 P.2d 221, 223 (1989) ("[O]nce the officer had seized the purse, he no longer had any reason to believe that it still posed an immediate threat to him."); *People v. Stewart,* 166 Mich.App. 263, 420 N.W.2d 180, 181–82 (1988) (holding that the search of purses could not be justified as a protective search for weapons when police had control of the purses); *State v. Wynne,* 552 N.W.2d 218, 222 (Minn.1996) ("[W]e fail to under-

stand how the purse remained a threat to officers when it had been taken away from its owner.").

¶ 13 Our supreme court recently made a similar determination when it held that even a warrantless search of a defendant's vehicle incident to his arrest, a normally justified exception to the warrant requirement, did not apply when "based on the totality of the circumstances, an arrestee is secured and thus presents no reasonable risk to officer safety or the preservation of evidence." *Gant,* 216 Ariz. at 7, ¶ 23, 162 P.3d at 646. In such cases, "a search warrant must be obtained unless some other exception to the warrant requirement applies." *Id.; cf. United States v. Chadwick,* 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (holding that once federal agents had exclusive control of a footlocker, its warrantless search could not be justified by "any other exigency"), *overruled on other grounds by California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

¶ 14 Cases in which a search of a seized purse has nevertheless been found justified involve facts that are not present here. Appellant had been compliant when Officer Stewart asked her to stop. She had shown no interest in getting into the purse before Officer Stewart took it, had not resisted Officer Stewart when he took it, and had made no attempt to regain control over it after he took it. There was no testimony that the purse was heavy or that anything about its feel suggested that it contained a weapon. Nor was there any testimony establishing a reason to believe that Appellant had access to any weapons, nor were she and Officer Stewart alone, as both Officer Lilly and Appellant's mother were present at the scene. *See United States v. Flippin,* 924 F.2d 163, 166 (9th Cir.1991) (holding that the opening of a makeup bag was justified when a woman had grabbed the bag when the officer turned away, had resisted it being taken from her, the bag felt heavy, her companion had been armed the previous day, and the officer and individual were alone); *Bush v. State,* 632 P.2d 764, 765 (Okla.Crim.App.1981) (holding that a search was justified when the police responded to a complaint that a woman at a

school bus stop might have a gun in her purse, the woman's responses to police inquiries were unhelpful, and she resisted the purse being taken from her).

¶ 15 As *Flippin* explained, the relevant question is "whether the danger justifying the seizure still existed once the officer had custody of the container. If the exigency was gone, a search warrant must be obtained before it may be opened." 924 F.2d at 166. Here, once Officer Stewart secured Appellant's purse, he deprived her of access to anything that it might contain. If she had been armed with anything in the purse, he had already disarmed her. Nor is there any evidence in the record to indicate that the seizure had not effectively foreclosed the possibility of Appellant using anything in her purse to harm herself or others. Thus, there was no objective basis in the record on which to justify the additional search of the purse once Officer Stewart had seized it. *Cf. Valle,* 196 Ariz. at 328, ¶ 14, 996 P.2d at 129 (rejecting an officer's claim that he was justified in asking the defendant to remove his shoes when there was "nothing in the record to show that this Officer justifiably believed that Defendant might actually have hidden a weapon in his shoe or, if he had, that he would have been able to quickly retrieve it"). "[The] purpose of [a] *Terry* pat-down 'is only to find implements which could readily be grasped by the suspect during the brief face-to-face encounter, not to uncover items ... which could be brought out only with considerable delay and difficulty.'" *Id.* (quoting 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.5(b), at 274 (3d ed.1996)).

¶ 16 When the court observed at the hearing, "[o]nce you had position [sic] of the whole purse, it was safe of her use of committing suicide or hurting you because you had the whole purse," Officer Stewart replied, "[w]ell, she wasn't in custody at the time." The court then responded that "you could have given the purse to Mom instead of opening it up and it would have been just as safe at that circumstance?" Officer Stewart replied, however, that he did not know Mother and had never seen her before and could

not be sure of his safety by giving the purse to Mother.

¶ 17 With respect to Officer Stewart's observation that he was entitled to search the purse because he had not yet taken Appellant into custody, we note that it is the arrest that generally justifies a warrantless search of a defendant's purse, not vice versa. And, as *Gant* demonstrates, a warrantless search of a purse incident to arrest is itself not appropriate when the purse is secured and "presents no reasonable risk to officer safety or the preservation of evidence." 216 Ariz. at 7, ¶ 23, 162 P.3d at 646. Obviously, that a person is not in custody is not in itself sufficient justification for a search absent other circumstances. To justify the search of Appellant's purse, Officer Stewart had to be able to point to particular facts from which he reasonably inferred that Appellant might make use of something dangerous that might be in her purse even once the purse had been taken from her. *Sibron v. New York*, 392 U.S. 40, 64, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (holding that an officer "must be able to point to *particular facts* from which he reasonably inferred that the individual was armed and dangerous") (emphasis added). A general observation that Appellant was not in custody is not a sufficiently particular reason for believing the purse still posed a danger once Officer Stewart had control of it.

¶ 18 To the extent that Officer Stewart felt unable to safely maintain possession of the purse while he assessed the situation, and to the extent he did not feel safe in handing it to Appellant's mother, he could have handed the purse to his partner Officer Lilly. When the dissent argues that there was no one else at the setting to whom a purse with unknown contents could be given, it ignores the presence of Officer Stewart's partner, Officer Lilly.

¶ 19 Further, nothing in the actual facts of this case supports Officer Stewart's immediate search of the purse before attempting to assess the situation. Thus, when the dissent engages in a worst-case scenario of what might have subsequently transpired had the purse been returned to Appellant before it was searched, it is pure speculation. The officers might have determined there was no danger in returning the purse to Appellant because the situation was never as exigent as the 9–1–1 report suggested. *See State v. Gissendaner*, 177 Ariz. 81, 83, 865 P.2d 125, 127 (App.1993) (holding that police, in responding to a domestic violence call, were not justified in engaging in a warrantless entry because the assault was over and "there was no real danger that the assault was about to resume"). Alternately, the officers might have had time to determine that Appellant's mother was rational and the purse could be safely given to her with instructions not to return it to her daughter until it was safe to do so. Or, if the officers remained concerned that Appellant might injure herself using something from the purse, and they had concerns Mother was not rational, they could have requested Appellant's consent to a search prior to its return. Or, if probable cause had arisen, they could have obtained a warrant to search the purse. "In this technological age, when warrants can be obtained within minutes, it is not unreasonable to require that police officers obtain search warrants when they have probable cause to do so to protect a citizen's right to be free from unreasonable governmental searches." *Gant*, 216 Ariz. at 6, ¶ 22, 162 P.3d at 645. Any of these steps would have been consistent with the Fourth Amendment and would have prevented the worst case scenario presented by the dissent. Instead, despite the opportunity Officer Stewart's seizure of the purse gave him to assess the situation, he immediately searched it to look for weapons. He may have done so in good faith, but it was beyond any recognized exception to the Fourth Amendment's presumptive warrant requirement. Thus, the court erred when it admitted the pipe he found into evidence.

¶ 20 Again, when neither safety nor the exigent need to preserve evidence justifies a warrantless search, *Gant* reemphasizes the longstanding principle that a warrantless search is not appropriate. Thus, even assuming the warrantless seizure of the purse may have been justified to ensure the safety of Appellant and the officers while the officers assessed the situation, its warrantless search was not.

### III. The Search Was Not Justified Under Either The Emergency Aid Exception Or The Police's Community Caretaker Function.

¶ 21 The dissent asserts that we should affirm on the basis of either the emergency aid exception or the police's community caretaker function. We do not view these issues as having been raised on appeal or below and thus normally would not address such issues. Even if we agreed with the dissent that these issues had been raised and preserved, it would not change our result here. While we have no particular quarrel with either doctrine, the necessary facts do not exist in the record in this case to support application of either exception. Both of these doctrines apply only when there is a particular perceived exigency that caused the warrantless search. In recognizing the emergency aid doctrine, the United States Supreme Court quoted Terry in prescribing its limits. "[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Mincey v. Arizona*, 437 U.S. 385, 393, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (quoting *Terry*, 392 U.S. at 26, 88 S.Ct. 1868). Similarly, the community caretaking function only sanctions a warrantless intrusion on privacy interests when the intrusion is

> suitably circumscribed to serve the exigency which prompted it.... The officer's ... conduct must be carefully limited to achieving the objective which justified the [search]—the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance [or property is at risk] and to provide that assistance [or to protect that property.]

*People v. Ray*, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 937 (1999) (internal quotations omitted). The search of Appellant's purse here surpassed those limits.

**2.** The dissent cites no cases in which the emergency aid doctrine has been used to analyze a search that the officer testified was done because the individual might be armed and dangerous. That kind of emergency is traditionally analyzed under *Terry*. As is discussed above, the limits on

### A. The Emergency Aid Doctrine Would Not Have Authorized Officer Stewart's Search.

¶ 22 There is a difference between searching a purse for weapons and searching a purse because the juvenile, who is unconscious or otherwise unresponsive, is in need of emergency aid and the search is undertaken to facilitate the aid that might be necessary.[2] To the extent that searches of purses and similar items have been analyzed under the emergency aid doctrine, it has been for such reasons. *See generally State v. Amarelle*, 190 S.W.3d 1 (Tex.Ct.App.2005) (involving the police finding a college identification card and a container of a substance in the open purse of an unresponsive woman); *Terry v. Commonwealth*, 23 Va.App. 87, 474 S.E.2d 172 (1996) (involving an officer searching the fanny pack of unaccompanied man in a semiconscious state to find identification, medical information, and the cause of the man's condition).

¶ 23 Here, unlike any emergency aid case involving the search of a purse, Appellant was not unresponsive, not unaccompanied, not in obvious need of immediate medical attention, and both Appellant and Mother were present and able to provide needed medical information in the event it had been necessary. The dissent suggests that the court may find a search justified based on the possible discovery of "an emptied pill box containing evidence of an overdose requiring immediate medical assistance," *infra* at ¶ 46. To the extent that Appellant was in need of emergency aid and unconscious or unresponsive we would agree that a search for such a source of Appellant's distress would be justified—but Appellant was neither. This is a key distinction between this case and both *Amarelle* and the Virginia court's decision in *Terry*. The dissent cites no case for the proposition that an emergency search of a person's purse is authorized by that person's need for emergency aid in circumstances in which that person is fully alert, suffering no

the two exceptions are the same. *Mincey*, 437 U.S. at 393, 98 S.Ct. 2408 ("[A] warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" (quoting *Terry*, 392 U.S. at 26, 88 S.Ct. 1868)).

impairments, and is fully complying with police directives.

¶ 24 Nor in his testimony did Officer Stewart suggest that his search was motivated by Appellant's need for emergency treatment. Rather, he testified he searched the purse, pursuant to *Terry v. Ohio,* to look for weapons with which the juvenile could harm herself or the officer:

Q. Did you do anything with regard to her purse?

A. Yes. I did. I immediately seized her purse due to the totality of the information that she was possibly wanting to commit suicide.

Q. Okay. Andy (sic) why did you seize that? What did you think may be there?

A. Any type of weapon to harm herself or me.

Q. Did you look in that purse?

A. Yes. I did.

. . .

A. I opened the purse to see if there was a weapon in there.

¶ 25 The dissent cites caselaw for the proposition that Officer Stewart's actual reason for searching the purse is irrelevant if there existed a separate objective basis for the search. But, in cases such as the emergency aid exception where the warrantless search is limited by the exigency that gives rise to it, the officer's perception of the exigency is a necessary limitation on the search. As has been established above, no objective basis sufficiently justified the search of Appellant's purse once it was in the control of Officer Stewart.

**B. The Community Caretaker Function Would Not Have Authorized Officer Stewart's Search.**

¶ 26 Recognizing that Officer Stewart's seizure of Appellant's purse may have ended any prospective emergency with respect to her use of anything in it, the dissent asserts that the search of the purse is nevertheless justified by the police's community caretaking function, even if it is not authorized by the emergency aid exception.

¶ 27 The dissent cites to the California Supreme Court's plurality opinion in *Ray,* 88 Cal.Rptr.2d 1, 981 P.2d at 928, and urges us to follow it here. While *Ray* may have presented facts in which the community caretaking function justified a different result than the emergency aid exception, it is not apparent to us how it would do so in this case.

¶ 28 In *Ray,* neighbors called the police because a home's front door had been open all day and the interior of the house appeared to be ransacked. *Id.* at 931. Police responded to the home, knocked and identified themselves, but no one responded. *Id.* at 931–32. From the door they could see that the interior was a shambles. *Id.* at 931. Fearing for the welfare of the occupants, or that a burglary might have occurred or be in progress, the police officers entered the home. *Id.* at 932. They found no one inside and they opened "[n]o interior doors or containers." *Id.* Nevertheless, they did observe a large quantity of cocaine and money. *Id.* Rather than seizing the cocaine or the money, they obtained a warrant, and then, pursuant to the warrant, searched the home and seized the evidence. *Id.* The court in plurality found that the officers acted appropriately in balancing the defendant's right to privacy with the police's obligation to protect persons or property in light of their community caretaker function. *Id.* at 938–39.

¶ 29 However, the possible distinction between the emergency aid exception and the community care exception evidenced by the facts in *Ray* has no apparent application here. Even assuming it did, as we have noted above, the court in *Ray* limited the warrantless searches that were authorized by the community caretaker function to those that were "suitably circumscribed to serve the exigency which prompted it." *Id.* at 937. To the extent the purse posed a danger to Appellant, or anybody else, Officer Stewart provided an appropriate response by immediately removing it from her control.[3] He did not have a warrant for doing so, but the

---

**3.** These facts distinguish this case from *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), in which the officers needed to secure a weapon they believed to be in the defendant's automobile that was not in the possession of the police.

juvenile does not challenge her purse's seizure. She challenges its search. The officer had no need to do more than to seize the purse to protect the juvenile (or anybody else) from any of the purse's contents while he assessed the situation and obtained a warrant if necessary.

¶ 30 Under the dissent's view, a search of Appellant's purse under the circumstances presented here is reasonable even if it falls outside the permissible and traditionally-recognized exceptions to the warrant requirement. Because this is so our dissenting colleague determines the search must fall within the ambit of the emergency aid and community caretaker doctrines. "[T]he emergency aid and community caretaker doctrines would *permit*—if not *require*—the officers" to make the search, *infra* at ¶ 59. Thus he suggests the officers would be liable for failing to undertake a search in these circumstances.

■ ¶ 31 While the dissent is correct that the Fourth Amendment only forbids unreasonable searches, our precedent establishes that warrantless searches are presumptively unreasonable, *see, e.g., Gant,* 216 Ariz. at 3, ¶ 8, 162 P.3d at 642 (citing *Katz,* 389 U.S. at 357, 88 S.Ct. 507); *Rodriguez v. Arellano,* 194 Ariz. 211, 214, ¶ 9, 979 P.2d 539, 542 (App.1999); *State v. Kempton,* 166 Ariz. 392, 395–96, 803 P.2d 113, 116–17 (App. 1990), and "[t]he burden is on the party seeking [an exemption from the warrant requirement] to show the need for it," *State v. Fisher,* 141 Ariz. 227, 237, 686 P.2d 750, 760 (1984) (citations omitted). The reasonableness of a protective search under *Terry* is to be established by reference to particular facts necessitating the intrusion. Officer Stewart testified to no such facts once he had the purse. We come to this conclusion not because we disagree with the juvenile court with respect to what the facts are—the facts in this case are not in dispute—but rather because we disagree with the juvenile court as to how the law applies to those facts, and it is our responsibility to make that determination de novo.

¶ 32 Because the warrantless search of the purse was not justified under the circumstances, the marijuana pipe should not have been admitted into evidence, and Officer Stewart's testimony regarding its discovery should not have been permitted at the hearing. *See State v. Hunt,* 2 Ariz.App. 6, 12, 406 P.2d 208, 214 (1965) (holding that the exclusionary rule "applies to oral evidence adduced from an officer's testimony as to what he saw or found pursuant to an illegal search").

¶ 33 The finding of delinquency is thus vacated and remanded.

CONCURRING: DONN KESSLER, Judge.

BARKER, Judge, dissenting.

¶ 34 My view of what constitutes an "unreasonable" search under the Fourth Amendment differs from that of my colleagues. The trial judge's ruling that the search was constitutional should be sustained as it falls within the emergency aid doctrine and/or the community caretaker function as set forth in *Mincey v. Arizona,* 437 U.S. 385, 392–94, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Cady v. Dombrowski,* 413 U.S. 433, 441–50, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Fisher,* 141 Ariz. 227, 237–41, 686 P.2d 750, 760–64 (1984); and related cases.

## I.

¶ 35 The officers here were responding to a 911 call from a frantic mother who believed her fourteen-year-old daughter was going to commit suicide. When the officers were dispatched they were informed that

It was an emergency high traffic pertaining to a domestic violence and a female possibly—well, indicating *she was trying to kill herself* or wanting to kill herself.

(Emphasis added.) When asked by the trial court why the officer seized the purse, he responded, "I immediately seized her purse due to the totality of the information that *she was possibly wanting to commit suicide.*" (Emphasis added.) He testified that he thought the purse might contain some "type of weapon to harm herself or me." The officer noted that "we have a call 911 of domestic violence, and it said on the call *the daughter's completely out of control.*" (Em-

phasis added.) He indicated that "the mother had said, she's gonna commit suicide."

¶ 36 The initial facts observed at the scene were consistent with the 911 call. When the officers arrived at the scene, they never even made it to the apartment complex "because the mom waved me down because the Defendant had run from the apartment." When the officer first contacted the daughter, he described her demeanor as being "very agitated, mad, angry, verbal, loud." She was also holding a blue purse.

¶ 37 The mother's testimony of what was happening at the scene confirmed the information that the officer had prior to and upon arrival:

Q: What happened?

A: Well, her and I had been arguing, okay? And it's not so much that we had been arguing. *Tiffany goes and Tiffany is psychotic.* I call them psychotic—okay? That's all I can say. Ever since she's been on her medicine, I have never seen it, her sister's never seen it, nobody's ever seen it. But, she just goes—okay? And that's why I was saying, I think she's on drugs, you know? And that's why I said I wanted her tested. We always get negative, but, you know, *yet she still acts like this.*

(Emphasis added.) The officer also testified that there was no one at the scene with whom he could safely leave an unopened purse:

The Court: But then again, once you take the purse, you could have given the purse to Mom instead of opening it up and it would have been just as safe at that circumstance?

The Witness: I don't believe so because I don't know her. I've never seen her before.

\* \* \*

The Court: I see. With Mom coming then, you could have given the purse to Mom?

The Witness: Well, it was a hostile situation. She was very irritated.

¶ 38 On appeal we are required to view the facts in the light most favorable to sustaining the trial court's ruling. *State v. Smith,* 197 Ariz. 333, 335, ¶ 2, 4 P.3d 388, 390 (App.1999). While we review conclusions of law, and the application of facts to law, de novo, *In re Ryan A.,* 202 Ariz. 19, 21, ¶ 7, 39 P.3d 543, 545 (App.2002), we are not free on appeal to resolve conflicting facts or factual inferences in a different fashion. *In re Adoption of Baby Boy,* 106 Ariz. 195, 202, 472 P.2d 64, 71 (Ariz.1970). Viewed in the light most favorable to upholding the trial court's ruling, the facts that we must apply to the law show a young teenage woman who was "completely out of control," "psychotic," was "gonna commit suicide," and had the purse at issue in her hand.

## II.

### A.

¶ 39 The Fourth Amendment provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects against *unreasonable searches and seizures,* shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Emphasis added.) From my perspective, the threshold question here is whether the opening of the purse was an "unreasonable search" and thus prohibited by the Fourth Amendment. *See Brigham City, Utah v. Stuart,* 547 U.S. 398, ——, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650 (2006) ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions.").[4]

---

**4.** For a discussion, with different views, of the Fourth Amendment from a reasonableness paradigm as contrasted with a warrant-requirement paradigm, see Akhil Reed Amar, *Fourth Amendment First Principles,* 107 Harv. L.Rev. 757 (1994); Thomas Y. Davies, *Recovering the Origi-*

*nal Fourth Amendment,* 98 Mich. L.Rev. 547 (1999); Craig M. Bradley, *Two Models of the Fourth Amendment,* 83 Mich. L.Rev. 1468 (1985). By focusing on the two exceptions discussed at length (the emergency aid doctrine and the community service function), the analysis in this dis-

If the search was "unreasonable," it is prohibited. If it was not an "unreasonable search," it is not prohibited.

¶ 40 This dissent first discusses the emergency aid doctrine and then the community caretaker function in concluding that the search of the purse here was not unreasonable.

### B.

¶ 41 In *Mincey,* the United States Supreme Court recognized the right of police to respond to emergency situations.[5] 437 U.S. at 392, 98 S.Ct. 2408. This right is based on the need to respond to exigencies, as recognized in *Terry v. Ohio,* 392 U.S. 1, 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889 (approving a warrantless search "necessary for the discovery of weapons which might be used to harm an officer or others nearby"). *Mincey* involved the warrantless search of an apartment after a drug raid. *Id.* at 387–88, 98 S.Ct. 2408. The Court in *Mincey* rejected the claim that a "four-day search" was a reasonable response to an emergency. *Id.* at 388–91, 98 S.Ct. 2408. However, in doing so, the Court made clear that the police must be able to appropriately respond, without a warrant, when emergency aid is required:

> We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.

*Id.* at 392, 98 S.Ct. 2408. When the police are in such a situation, "[t]he need to protect or preserve life or avoid serious injury is

justification for what would be illegal otherwise." *Id.* at 392–93, 98 S.Ct. 2408 (quoting *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.1963) (Burger, J., concurring)). The Court noted that the "warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" *Id.* at 393, 98 S.Ct. 2408 (quoting *Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868).

¶ 42 In *Fisher,* the Arizona Supreme Court cited to *Mincey* and other courts in applying the emergency aid doctrine. 141 Ariz. at 237, 686 P.2d at 760 (citing *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *State v. Wright,* 125 Ariz. 36, 607 P.2d 19 (App.1979); *People v. Reynolds,* 672 P.2d 529 (Colo.1983); *United States v. Booth,* 455 A.2d 1351 (D.C.App.1983); *People v. Mitchell,* 39 N.Y.2d 173, 347 N.E.2d 607, 383 N.Y.S.2d 246, *cert. denied,* 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976); *State v. Jones,* 45 Or.App. 617, 608 P.2d 1220 (1980)). The facts in *Fisher* involved the warrantless search of defendant's apartment. 141 Ariz. at 235, 686 P.2d at 758. A friend of the defendant became concerned about the welfare of the defendant after a murder had occurred. *Id.* In responding to the welfare check of the defendant's apartment, the police found evidence that the defendant was involved in the murder. *Id.* at 235–36, 686 P.2d at 758–59. The defendant moved to suppress it. *Id.* at 236, 686 P.2d at 759. The trial court denied the motion, and the Arizona Supreme Court affirmed. *Id.*

¶ 43 *Fisher* recognized that "[b]ecause it is not unreasonable for police to enter a dwelling for the purposes of providing emergency aid or assistance, such entries are not proscribed by the fourth amendment." *Id.* at 237, 686 P.2d at 760. The exception "pro-

sent is intended to satisfy the warrant-requirement paradigm while still being consistent with the plain language of the Fourth Amendment as reflected in the reasonableness paradigm.

5.  The emergency aid doctrine has been applied in a number of federal circuits and different states. *E.g., Brigham City,* 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650; *Mincey,* 437 U.S. at 392–96, 98 S.Ct. 2408; *U.S. v. Black,* 482 F.3d 1035, 1041 n. 1 (9th Cir.2007); *Ostroski v. Town of Southold,* 443 F.Supp.2d 325, 344–45 (E.D.N.Y.2006); *Wayne v. United States,* 318 F.2d

205, 210–14 (D.C.Cir.1963); *United States v. Barone,* 330 F.2d 543 (2nd Cir.1964); *State v. Weaver,* 214 Or.App. 633, 168 P.3d 273 (2007); *People v. Davis,* 442 Mich. 1, 497 N.W.2d 910, 920–21 (1993); *Salt Lake City v. Davidson,* 994 P.2d 1283 (Utah App.2000); *see also* Matthew Bell, *Fourth Amendment Reasonableness: Why Utah Courts Should Embrace the Community Caretaking Exception to the Warrant Requirement,* 10 Boalt J.Crim. L. 3 (2005); Fern Lynn Kletter, *Necessity of Rendering Medical Assistance as Circumstance Permitting Warrantless Entry or Search of Building,* 2003 A.L.R.5th 12 (2003).

vides that officers of the state may enter a dwelling without the benefit of a warrant where they reasonably believe there is someone within in need of immediate aid or assistance." *Id.* The court established three elements to determine whether the emergency aid exception applies:

> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Id.* at 237–38, 686 P.2d at 760–61 (quoting *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (1976)); *see also State v. Jones,* 188 Ariz. 388, 395–96, 937 P.2d 310, 317–18 (1997) (applying the three elements of the emergency aid exception). Although the issue here is the search of a purse, rather than the search of a residence, the same interests apply. Here, there are facts that support each of the three factors from *Fisher,* as applied to the purse searched here.

¶ 44 As to the first factor, there are facts to support that the officer had "reasonable grounds to believe that there [was] an emergency." *Fisher,* 141 Ariz. at 237, 686 P.2d at 760. The officer was responding to an emergency domestic violence 911 call with the mother indicating that the daughter was "completely out of control" and that "she's gonna commit suicide."

¶ 45 The second factor is whether the search was motivated by an "intent to arrest and seize evidence." *Id.* The officer testified that he searched the purse for "[a]ny type of weapon to harm herself." There is no factual basis to suggest that the officer

was seeking evidence of a crime when searching the purse. The physical facts at the scene (she was "very agitated, mad, angry" and ran away from the home) were consistent with both the suicide report and an objectively good faith response to a suicide attempt.

¶ 46 The third factor is whether the officer had a "reasonable basis, approximating probable cause, *to associate the emergency* with the area or place to be searched." *Id.* at 237–38, 686 P.2d at 760–61 (emphasis added). There is a "reasonable basis" for an officer "to associate" the purse with the emergency on this record because (1) the officers had been told the young woman was "trying to kill herself," and was "completely out of control"; (2) facts at the scene relative to the young woman's demeanor ("very agitated, mad, angry, verbal [and] loud") show her emotional state at the scene was consistent with this report of imminent suicide; (3) the purse is the one item that she took with her when leaving the scene of the domestic violence report; (4) a purse, in the hands of such a person, can contain a weapon that she could use to commit suicide; (5) learning what is in the purse in the context of such a setting would be necessary to know how to respond to the emergency (i.e. an emptied pill box containing evidence of an overdose requiring immediate medical assistance, a loaded weapon ready for use for a suicide, a razor blade that might be used for the same purpose, etc.); [6] and (6) the absence of another person at the scene to whom a purse with unknown contents in such a setting, could be given and left. Again, the mother's description of the scene, that the daughter "goes psychotic," gives further factual support to the trial court's decision in this regard.

¶ 47 Thus, there are facts in the record to support all three prongs of the *Fisher* test. On this record, under the emergency aid doctrine, the trial court should be affirmed.[7]

---

6. Contrary to the majority's assertion, the principles in *State v. Amarelle,* 190 S.W.3d 1 (Tex.App. 2005) and *Terry v. Commonwealth,* 23 Va.App. 87, 474 S.E.2d 172 (1996), are very much in play. Those cases invoke the emergency aid doctrine when there was a need to know medical information based on an unresponsive state.

Here, that same information was needed based on the threatened imminent suicide.

7. Appellant also makes a sufficiency of evidence argument, which was not necessary for the majority to address given their decision on the motion to suppress. As to that argument, the stat-

## C.

¶ 48 From my perspective, the emergency aid doctrine, as applied through *Fisher*, provides an adequate basis for the search of the purse. The community caretaking function, however, may be applied if one considers, as the defense argues and the majority accepts, that the emergency ended when the police seized but did not open the purse. Under the community caretaking function, as expressed in *Cady v. Dombrowski*, opening the purse would have been appropriate under that version of the facts as well. 413 U.S. at 441, 93 S.Ct. 2523. Based on this analysis, I also disagree with what the majority styles as a "general rule," that a purse once seized should not be opened. *Supra* ¶ 12 (citing *State v. Schellhorn*, 95 Or.App. 297, 769 P.2d 221 (1989) and related cases).

¶ 49 In *Cady v. Dombrowski*, the defendant's car struck a bridge abutment. 413 U.S. at 435–36, 93 S.Ct. 2523. The defendant-driver was taken to the hospital and was arrested on charges of DUI. *Id.* at 436–37, 93 S.Ct. 2523. Upon learning that the defendant was a Chicago policeman, and believing that he was required to have a weapon at all times, the officers returned to the car to retrieve the weapon from the vehicle and prevent "the possibility that a revolver would fall into untrained or perhaps malicious hands." *Id.* at 443, 93 S.Ct. 2523. In doing so, the police found evidence that linked the defendant to a murder. In upholding the admissibility of the evidence against a Fourth Amendment challenge, the Court described what it referred to as the community caretaking function of police officers:

> Local police officers … frequently … engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Id.* at 441, 93 S.Ct. 2523. The response to an emergency 911 suicide call certainly is part of the police's community caretaking function. *See also* ABA Standards for Criminal Justice § 1–1.1 (2d ed. 1980 & Supp.1986) (The police have "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; among other things, they are expected to provide "assistance to citizens in need of help such as the person who is mentally ill, the chronic alcoholic, or the drug addict."); *Id.* § 1–2.2 ("[M]ost police agencies are currently given responsibility, by design or default, to: (c) aid individuals who are in danger of physical harm; … (f) assist those who cannot care for themselves; … (g) resolve conflict; … and (k) provide other services on an emergency basis."). The community caretaking function does not necessarily require the least intrusive means when the police are serving in that capacity. *See Cady*, 413 U.S. at 447, 93 S.Ct. 2523 ("The fact that the protection of the public might, in the abstract, have been accomplished by less 'intrusive' means does not, by itself, render the search unreasonable.").

¶ 50 The community caretaking function, as expressed in *Cady*, has been applied in many state and federal jurisdictions. *E.g.*, *Lockhart-Bembery v. Sauro*, 498 F.3d 69 (1st Cir.2007); *Novitsky v. City of Aurora*, 491 F.3d 1244, 1253–54 (10th Cir.2007); *Samuelson v. City of New Ulm*, 455 F.3d 871, 877 (8th Cir.2006); *People v. Ray*, 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928 (1999); *In re J.M.E.*, 38 Kan.App.2d 229, 162 P.3d 835 (2007); *State v. Vaughn*, 338 Mont. 97, 164 P.3d 873 (2007); *State v. Bakewell*, 273 Neb. 372, 730 N.W.2d 335 (2007). There is no direct case in Arizona.

---

ute makes it "unlawful for any person to use, or to possess with intent to use, drug paraphernalia to … ingest, inhale or otherwise introduce into the human body." Ariz.Rev.Stat. § 13–3415(A) (2001). On appeal, "we consider whether the evidence sufficed to permit a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt." *In re Dayvid S.*, 199 Ariz. 169, 170, ¶ 4, 15 P.3d 771, 772 (App.2000).

Officer Stewart found the marijuana pipe in Appellant's purse. The officer testified that she said "it was her pipe and she was using it to smoke marijuana" and "she was using marijuana on a regular basis." The evidence was more than sufficient to support the trial court's findings. Accordingly, the adjudication and disposition on the merits was proper as well.

¶ 51 The California Supreme Court, in *People v. Ray,* referenced the community caretaker exception and distinguished it from the emergency aid doctrine. 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928. There the police observed, through an open front door, the ransacked interior of a home. *Id.* at 468, 88 Cal.Rptr.2d 1, 981 P.2d at 931. They were there in response to a neighbor's call of concern that something was awry. *Id.* at 468, 88 Cal.Rptr.2d 1, 981 P.2d at 931–32. The police entered to determine if aid was needed and came across evidence of a crime. *Id.* at 469, 88 Cal.Rptr.2d 1, 981 P.2d at 932.

¶ 52 The *Ray* court considered that "under the emergency aid component of community caretaking," there was a need for "swift action to prevent imminent danger to life or serious damage to property." *Id.* at 472, 88 Cal.Rptr.2d 1, 981 P.2d at 934 (citations omitted). The lead opinion found that the record failed to meet that standard for emergency aid, as there was no on-going emergency of that magnitude. *Id.* at 473, 88 Cal.Rptr.2d 1, 981 P.2d at 934. The lead opinion went on to hold that the police conduct in question met the lesser standard of a community caretaker exception. The court noted that "the appropriate standard under the community caretaker exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions?" *Id.* at 476–77, 88 Cal.Rptr.2d 1, 981 P.2d at 937.

¶ 53 On the facts in the case at hand, my view is that the standard from *Fisher* for emergency aid has been met. However, if one construes the facts, as the defendant and the majority do, so that the emergency has ended once the police have seized but not opened the purse, a search of the purse would still be appropriate under the community caretaking function as expressed in *Cady* and *Ray*.[8] As set forth at length

above, there was a 911 call of a threatened suicide. It was confirmed at the scene. The young teenage woman who was the subject of the call was "gonna commit suicide," described by her mother as "psychotic," and had the purse in her hand. Learning the contents of the purse was crucial to a proper police response. These facts must be viewed objectively. *See Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978) ("[T] he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); *see also Brigham City,* 126 S.Ct. 1943, 1948 (2006) ("The officer's subjective motivation is irrelevant," as a court need not "discern[ ] what is in the mind of the individual officer conducting the search."). A reasonably prudent officer, in the discharge of his or her duties should be expected to open the purse in the exercise of his or her community caretaking obligations in order to adequately respond to this situation. Thus, the trial judge should be affirmed on this basis as well.

### III.

### A.

¶ 54 The majority asserts that "the necessary facts" do not exist in the record to support applying either the emergency aid doctrine or the community caretaking function in this case. *Supra* ¶ 21.[9] This dissent has set forth at length the facts in the record that support both the emergency aid and the community caretaker exceptions. *E.g., supra* ¶¶ 35–38, 46–47. In short, Mother called 911 because her teenage daughter was "psychotic" and "trying to kill herself." This is exactly the type of factual scenario to which the emergency aid doctrine and/or communi-

---

8. For a discussion of *Ray* from different points of view, see Jennifer Fink, *People v. Ray: The Fourth Amendment and the Community Caretaking Exception,* 35 U. San Fran. L.Rev., 135 (2000); Matthew Bell, *Fourth Amendment Reasonableness: Why Utah Courts Should Embrace the Community Caretaking Exception to the Warrant Requirement,* 10 Boalt J.Crim. L. 3 (2005).

9. The majority also asserts these issues were not raised on appeal or below. The emergency aid and community caretaking doctrines are corollaries or subsets of *Terry v. Ohio* and the Fourth Amendment. As such, they were raised and preserved to the same extent as was the majority's argument that the purse, once seized, should not have been opened.

ty caretaker function apply. On appeal, we do not reweigh the facts, but view them in the light most favorable to sustaining the trial court's ruling. *Smith*, 197 Ariz. at 335, ¶ 2, 4 P.3d at 390.

¶ 55 As a practical matter, however, courts have struggled and do struggle with what Fourth Amendment theory to apply when the police are rendering emergency aid or are engaged in their community caretaker functions as contrasted with criminal investigations. *See* Mary Elizabeth Nauman, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 Am. J.Crim. L. 325, 326 (1999); Carrie Leonetti, *Open Fields in the Inner City: Application of the Curtilage Doctrine to Urban and Suburban Areas*, 15 Geo. Mason U. Civ. Rts. L.J. 297, 308 n. 50 (2005); Matthew Bell, *Fourth Amendment Reasonableness: Why Utah Courts Should Embrace the Community Caretaking Exception to the Warrant Requirement*, 10 Boalt J.Crim. L. 3 (2005); *see Barone*, 330 F.2d at 544–45 (referring to both the "duty of crime prevention" and "[t] he right of police to enter and investigate in an emergency without the accompanying intent to either search or arrest"); *compare Wayne v. United States*, 318 F.2d at 210, (utilizing the term "exigent circumstances" but not requiring any showing of probable cause) *with Fisher*, 141 Ariz. at 240, 686 P.2d at 763 (distinguishing exigent circumstances test from emergency aid doctrine on the basis that the latter has no probable cause requirement and the exigent circumstances test does); *United States v. Novick*, 450 F.2d 1111 (9th Cir.1971) (approving the police officer's opening of a gun case as it was reasonable under the Fourth Amendment, to prevent a future suicide, but setting forth no specific doctrine eliminating the need for a warrant).

¶ 56 In this case the officer indicated, subjectively, that he opened the purse based on the suicide attempt. This subjective view supports the emergency aid doctrine and community caretaking function. However, it is an objective view of the facts that matters and that view, too, can only show that the motivation for police intervention was the 911 call that an out-of-control young woman was "gonna commit suicide." *See Scott*, 436 U.S. at 138, 98 S.Ct. 1717 (officer's state of mind "does not invalidate the action taken as long as the circumstances, *viewed objectively*, justify that action."); *see also Brigham City*, 126 S.Ct. at 1948 ("the officer's subjective motivation is irrelevant"). Therefore, the taking and opening of the purse in this case is most accurately viewed not as part of a criminal investigation, but part of responding to the mother's frantic plea for help with a suicidal teenage daughter.

### B.

¶ 57 As the majority correctly notes, a primary issue is whether the police should have reasonably opened the purse once they had possession of it. Referring to both the emergency aid doctrine and the community caretaking function, and why the need to open the purse was reasonable, a hypothetical example may best make the point. *In re Andrew C.*, 215 Ariz. 366, 370, ¶ 21, 160 P.3d 687, 691 (App.2007).

¶ 58 What if the police officers had not opened the purse, but instead returned it to the "hysterical" mother who then gave the purse to the suicidal daughter after the officers left? [10] Assume there was a handgun in the purse. The daughter then opens the purse, takes out the handgun, shoots and kills herself.

---

10. The majority also asserts that "to the extent [Officer Stewart] did not feel safe in handing [the purse] to Appellant's Mother, he could have handed the purse to his partner Officer Lilly." *Supra* ¶ 18. The majority further posits that "[w]hen the dissent argues that there was no one else at the setting to whom a purse with unknown contents could be given, it ignores the presence of Officer Stewart's partner, Officer Lilly." *Id.*

There is no dispute that the purse could have temporarily been given to Officer Lilly. The problem, however, is that like Officer Stewart, Officer Lilly would be leaving the scene. As the dissent attempts to make clear, there is no one with whom the purse could be "given *and left*" once the officers had left the scene. *Supra* ¶ 46 (referencing as a factor "the absence of another person at the scene to whom a purse with unknown contents in such a setting could be *given and left*.") (emphasis added).

¶ 59 Under the majority's analysis, the City and police would have acted properly on the theory that there was no constitutional right to open the purse and, accordingly, no possible duty for the police to prevent this scenario from occurring. *Supra* ¶ 19. Under the analysis in this dissent, the emergency aid and community caretaker doctrines would *permit*—if not *require*—the officers to pursue a course similar to the one here to avoid this potential result. As Arizona law provides, "[a] policeman has *the duty* to be alert to suspicious circumstances *and to investigate if necessary, provided* that he is *acting within constitutional limitations.*" *State v. Miller,* 112 Ariz. 95, 97, 537 P.2d 965, 967 (1975) (emphasis added).

¶ 60 The majority's analysis draws on the second portion of this correct proposition and reaches the conclusion that the *duty* does not come into play in this case as the Constitution forbids the officers from investigating further. This dissent points out that there are no such constitutional limitations on the record here as the emergency aid doctrine and community caretaker function apply. Accordingly, consistent with ABA standards, Arizona law, and a plethora of cases from other jurisdictions, the officers not only were *permitted* to act but likely had a *duty* to do so, which they appropriately fulfilled here.[11] *See* ABA Standards for Criminal Justice § 1–2.2 ("[M]ost police agencies are currently given responsibility, by design or default, to: ... (c) aid individuals who are in danger of physical harm; ... (f) assist those who cannot care for themselves; ... (g) resolve conflict; ... and (k) provide other services on an emergency basis."); *Hutcherson v. City of Phoenix,* 192 Ariz. 51, 961 P.2d 449

(1998) (affirming the City's fault at 75% and murderer's fault at 25% on a combined award of $1.7 million with the City's fault being based on a breach of its duty to appropriately respond to a 911 call); *Novick,* 450 F.2d at 1112–13 ("[T]he police were casually looking for weapons to prevent the recurrence of an attempt at suicide ... The officers here *would have been derelict in their duties* if they had not opened the case.") (emphasis added); *United States v. King,* 990 F.2d 1552, 1560 (10th Cir.1993) (applying *Cady* to the seizure of an individual and noting that "police officers are *not only permitted, but expected,* to exercise what the Supreme Court has termed 'community caretaking functions.'") (emphasis added); *Winters v. Adams,* 254 F.3d 758, 764 (8th Cir.2001) (applying the community caretaking function and rejecting the argument "that the police officers were required simply to walk away from appellee's vehicle, thus perhaps permitting a possibly intoxicated person to drive the vehicle," and finding that the officers *"would have been derelict in their duties"* had they not acted.) (citations omitted) (emphasis added); *Barone,* 330 F.2d at 545 ("Their investigation of the cause of the screaming would have been incomplete without finding out who might be in the bathroom and whether anyone there might be in need of aid ... *The performance of [the officer's] duty required him to act as he did.")* (emphasis added); *Wayne,* 318 F.2d at 213 (Burger, J. concurring) (in "checking a report of a dead, dying, or unconscious woman" had the police "paused for a warrant with the risk that the 'unconscious woman' might die while papers were being drawn *they could surely merit censure")* (emphasis added).[12]

---

11. It is, obviously, not necessary to determine whether there was a duty in tort as tort liability is not an issue. This is a criminal case and the officers properly fulfilled their responsibilities in responding to the emergency. *See Gipson v. Kasey,* 214 Ariz. 141, 150 P.3d 228 (2007) (providing a recent discussion of factors to consider in determining whether a duty in a negligence case is present).

12. The majority also cites for support to the Arizona Supreme Court's recent decision in *State v. Gant,* 216 Ariz. 1, 162 P.3d 640 (Ariz.2007). *Supra* ¶¶ 7, 13. In *Gant,* the Arizona Supreme Court examined the search incident to arrest

exception as applied to the Fourth Amendment. 216 Ariz. at 1, ¶ 1, 162 P.3d at 641. That issue prompted a three-two division on the court, but the search incident to arrest exception is not at issue here. *Gant* dealt with an arrested person, secured and handcuffed in the back of a patrol car, with a search then being conducted of the vehicle that the arrested person had been previously driving. The search incident to arrest exception was at issue. *Id.* at ¶¶ 3–4, 162 P.3d 640. Here, a young girl is threatening to commit suicide and we deal with the police's response to that emergency. To the extent general principles from *Gant* are applicable, nothing in this dissent is inconsistent with these principles.

### C.

¶ 61 The majority also responds that the hypothetical scenario references "a worst case scenario of what might have subsequently transpired [that] is pure speculation." *Supra* ¶ 19. The majority misses the point. "Frequently, hypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle." *In re Andrew C.*, 215 Ariz. at 370, ¶ 21, 160 P.3d at 691.

¶ 62 One of the principal tenets of statutory and constitutional interpretation is that we are to consider what the "effects and consequences" of our interpretation will be. *Logan v. Forever Living Prods., Int'l, Inc.*, 203 Ariz. 191, 194, ¶ 10, 52 P.3d 760, 763 (2002) (looking to the "effects and consequences" of competing statutory interpretations); *Am. Fed'n of State, County and Mun. Employees, AFL–CIO, Local 2384 v. City of Phoenix*, 213 Ariz. 358, 363, ¶ 15, 142 P.3d 234, 239 (App. 2006) ("When a constitutional or statutory provision is not clear, we may look to the context, subject matter, historical background, effects, consequences, spirit, and purpose of the law."); *Arizona Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, 356, ¶ 67, 121 P.3d 843, 862 (App.2005) ("When a constitutional provision is unclear, we consider its effect, consequences, context, and spirit.").

¶ 63 The majority wishes to ignore the "effects and consequences" that flow from its interpretation of what the term "unreasonable search" in the Fourth Amendment means. One of those clear "effects and consequences" is the unfortunate scenario described above.

### IV.

¶ 64 By its explicit terms, the Fourth Amendment only precludes *"unreasonable* searches and seizures." U.S. Const. amend. IV (emphasis added); *Brigham City*, 126 S.Ct. at 1947 ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions."). The search here falls within the parameters of the emergency aid doctrine and/or the community caretaker function.

¶ 65 Applying the language of the Fourth Amendment, I think it would strike the reasonably objective person as odd that we find it "unreasonable" as a matter of law, and indeed, *unconstitutional* for a police officer to conduct a limited search of a purse for a means of committing suicide when a person is "completely out of control," "psychotic," there has been a 911 call that suicide is imminent as the person is "gonna kill herself," the officers at the scene find facts that confirm that 911 call, the victim has the purse in her hand and there is no reliable other person immediately available to inspect the contents of the purse. If the term "unreasonable" in the text of the Fourth Amendment has any ordinary, common-sense meaning, it does not preclude a search on facts such as these. The emergency aid doctrine and the community caretaker function appropriately act to give effect to that language. I respectfully dissent.